# FLORIDA CENTRAL RAILROAD COMPANY *v.* CHEROKEE SAWMILL COMPANY.

1. A railroad company entered into a written contract with a sawmill company, which had a sawmill and certain standing timber located on the line of the railroad, by which contract the sawmill company was to be permitted to operate its trains for logging purposes only over the tracks of the railroad company " between Thomasville and the stations known as Roddenbery, Ga. (13 M. P.), Copeland, Fla. (19 M. P.), and another point about twenty-six miles south of Thomasville, with the right of ingress and egress to the tracks of the party of the first part' [the railroad company], and to use any ,side-tracks within the said limits whenever necessary to enable trains to pass each other within their limits." *Held:* that this contract did not give to the sawmill company the right of ingress and egress to the tracks of the railroad company by building tramways connected therewith at any and all points along the line of railroad, but only at the points mentioned.

2. The. evidence, tending to show that the parties had mutually departed from the strict terms of the contract, and that the railroad company had permitted the sawmill company to join tramways to the main line of the railroad at certain places other than those specifically named, and to continue to use them, and that the sawmill company had ex-

pended a considerable sum of money on the faith thereof, was sufficient to authorize the presiding judge to grant an interlocutory injunction against the railroad company, to restrain it from interfering with the sawmill company in operating its trains for logging purposes, in accordance with the provisions of the contract, from the three points designated, and from the other points which had been adopted and in use, in consequence of such mutual departure from the terms of the contract, the judge at the same time enjoining the sawmill company from tapping the railroad at other points.

3. Under the evidence, there was no abuse of discretion in not denying the interlocutory injunction on the ground that the sawmill company was carrying on its logging trains employees, feed, water, and supplies incident to and forming a legitimate part of "the logging purposes" provided for in the contract; and that such carriage constituted a breach of the contract or of the interstate commerce law.

4. It was not alleged or proved that the contract itself constituted a violation of the interstate-commerce law, with such distinctness as to authorize this court to reverse the action of the presiding judge in granting an ad interim injunction. Both sides set up the contract, but each asserted certain violations of it and certain illegal conduct on the part of the other.

5. Upon the hearing of an application for an interlocutory injunction, the presiding judge can not grant a mandatory injunction, commanding a party to do certain things, or appointing a third person to see that they are done, or the like.

6. On the hearing of an application for an interlocutory injunction, the presiding judge should not undertake to finally adjudicate issues of fact, but should pass on such questions only so far as to determine whether the evidence authorizes the grant or refusal of the interlocutory relief.

7. Direction is given that the judgment be modified in accordance with the above rulings.

MARCH 14, 1912.

Injunction. Before Judge Thomas. Thomas superior court. March 14, 1911.

The Florida Central Railroad Company and the Cherokee Sawmill Company entered into a written contract the body of which was as follows: "This agreement made and entered into upon this the 15th day of January, 1908, between the Florida Central Railroad Company, party of the first part, and the Cherokee Sawmill Company, party of the second part, both of the said parties being corporations respectively chartered under the laws of this State, witnesseth, first, that the party of the second part has [is] hereby given the right of trackage, that is to say, to operate its trains for logging purposes only, over the tracks of the said party of the first part, between Thomasville and stations known as Roddenbery, Ga. (13 M. P.), Copeland, Fla. (19 M. P.), and another point about

twenty-six miles south of Thomasville, with the right of ingress and egress to the tracks of the party of the first part, and to use any side-tracks within the said limits whenever necessary to enable trains to pass each other within their limits. Second, that whenever the locomotive or locomotives and cars of the said party may enter upon said tracks, they shall be operated under the control and direction, and subject to the order, of the officials and agents of said party of the first part. Third, that the parties hereto shall be respectively liable, both as between themselves and as between third parties and themselves, for any loss, injury, or damage, whether to persons or property, arising from the negligence or other fault, and the loss resulting therefrom shall be paid by the party at fault, and each shall and will fully indemnify and protect the other against any loss, damage, or expense incurred by reason thereof; and further, if any such injury, loss, or damage is sustained by either party through the joint negligence of the servants employed respectively by them, the same shall be borne by each in proportion in which its fault or negligence has contributed thereto; but if sustained by third persons not parties hereto, then the loss shall be borne equally by both parties hereto. Fourth, that the party of the second part shall and will furnish engine crews, conductors, and flagmen for all of their trains operated within said limits, at their own expense, such engine crews, conductors, and flagmen to be acceptable to the party of the first part. Fifth, party of the second part is relieved from furnishing conductors on its trains until such time as it may be deemed necessary, and notice to that effect is furnished by said party of the first part. Sixth, that if any damage, loss, or injury arises either to persons or property from the failure of the party of the second part to operate its locomotives and trains within the limits aforesaid with due care and in accordance with the direction that may be given therefor by said party of the first part, then said loss, injury, or damage shall be wholly borne and paid by the second party and the first party saved and held harmless by it therefrom and from any expense, cost, or charge incident to or arising therefrom. Seventh, that the party of the second part shall pay to the party of the first part the sum of $10.00 per year for the aforesaid privilege, a further consideration being that all of the manufactured products of the party of the second part shall be shipped over the line of the party of

52

the first part. Eighth, it is further agreed by the party of the second part that it will furnish free to the party of the first part water for its locomotives from the tanks of the party of the second part, also wood at actual cost of production. Ninth, that all bills arising and becoming available by virtue of this contract in favor of either party shall be rendered at the end of each month, and paid with reasonable promptness after the receipt thereof."

The sawmill company filed an equitable petition against the railroad company, alleging, that the defendant was interfering with its exercise of the right provided by the contract, and had notified the plaintiff to desist from the further use of the railroad for hauling logs; that the defendant was insolvent and unable to respond in damages; and that irreparable damage would follow. There were other allegations not necessary to be set out. Injunction was prayed, and also a proper construction of the contract. The defendant admitted the making of the contract, but denied a breach on its part. It alleged various breaches by the plaintiff, including making connections with its track at points other than those mentioned in the contract; the hauling, upon the logging trains, of hands used in the logging business, without the payment of passenger fares; the hauling of various articles to its camp, without paying freight tariffs as required by law; the operating of the log trains with an engineer who was habitually intoxicated; and the use of defective equipment, endangering the business and property of the railroad company as an interstate and intrastate carrier.

On the hearing there was conflicting evidence. The presiding judge rendered the following judgment: . . "It is manifest that the litigation is the outcome of factional conditions of contending with respect to the plaintiff and defendant. I am impressed that it is the duty of the court to pass such orders, in the light of the contractual relations of the parties, and under the guidance of same, which will preserve and protect the interests of both plaintiff and defendant. The contract over which the litigation arises has been in existence for approximately three years, and has daily served the interest of both the plaintiff and the defendant. The original contract provided for intersections of the tramlines of the plaintiff with the main line of the defendant at the thirteenth milepost, at the nineteenth milepost, and at another point about twenty miles south of Thomasville, and gave to the party of the first part,

the plaintiff, the right of trackage over its line for logging purposes only from these points to its mill at Thomasville, with certain
other restrictions. Certainly the parties of the first part, with the
observance of the other restrictions of the contract, are entitled to
its rights of trackage from the points designated in the contract.
Moreover, it is manifest that the mutual interest of the parties justified it, and the strict terms of the contract were mutually departed
from, and the plaintiff permitted to tap the main line of the defendant company at points and places other than those specially
named in the contract, notably at the eighth milepost on the line
of the defendant company, and, in consequence, expended necessarily outlays of money in preparing tramroads, buying iron, constructing the tramroads, and other expenditures incident to such
enterprise; and this seems, unquestionably and without contradiction, to have been with the concurrence and agreement of plaintiff
and defendant, the parties to the original contract, and without
protest until the beginning of this litigation. It is therefore held,
that the plaintiffs have the right, under the contract, during the
life of the same, to the right of trackage in the manner specified
in the contract from the thirteenth milepost and the nineteenth
milepost and another point about twenty miles south of Thomasville and from the eighth milepost and from such other points upon
the line as have, by the mutual concurrence of the parties, been
used by the plaintiff as a tapping point for the intersection of its
logging train in the pursuit of its business, pursuant to the purposes of the contract. And the defendant company is hereby restrained and enjoined from any interference whatever with the
plaintiff in the use and enjoyment of its right to operate its trains
for logging purposes, as construed by this order, and from the
three points designated in the contract, and from the eighth milepost and from such points as have already been adopted and in use,
in consequence of the mutual departure from the terms of the contract in the same manner as was done in the case of the junction
at the eighth milepost. It is further held that the notice on the
part of the defendant company to the plaintiffs, at the beginning
of this litigation, has the legal effect to remand the plaintiffs to a
literal observance of the terms of the original contract from that
date, and that accordingly, thereafter and from henceforward, the
plaintiffs are restrained and enjoined from tapping the lines of the

defendant company at any point and place other than those specified in the contract and such others as have already been tapped in the manner heretofore pointed out. It is further ordered that the equipment of the plaintiff company be subject to the inspection of O. C. Land, agreed upon by both parties at the hearing of contempt proceedings growing out of the temporary restraining order in this case, to make such inspection; and that the plaintiff company be restrained and enjoined, under penalty of contempt, from using any equipment, engines, or machinery in anywise dangerous to traffic or interests of the defendant, or engineers addicted to intoxication; and if the plaintiff and defendant are unable to agree with respect to the condition of such equipment, boilers, etc., the court will appoint an inspector to examine the boilers as well. Paragraph second of the contract between the plaintiff and defendant, and attached as exhibit ' A ' to the plaintiff's declaration, is ordered observed by the plaintiffs. It is further ordered that the defendant company be restrained and enjoined from any interference with the plaintiffs in carrying upon their train employees, feedstuffs, and outlays incident to, and to be used in connection with gathering, carrying, loading, and hauling the logs to be conveyed by the plaintiff to its mill under the provisions of the contract and in contemplation of the parties thereto. It is held that the carrying of employees, feed, water, and supplies and such incidents to the gathering, handling, hauling, loading, and carrying of the logs in controversy are incident to the logging purposes provided for in the contract between the plaintiff and defendant and covered by the terms of the contract, and the rights of plaintiffs are to be held inviolate with respect to the same. Let both parties, their officers, servants, agents, and employees observe this order."

The railroad company excepted.

*Theodore Titus* and *Branch & Snow,* for plaintiff in error.
*Fulwood & Skeen* and *Roscoe Luke,* contra.

LUMPKIN, J. In the main, there was no error, or abuse of discretion, on the part of the presiding judge in granting an interlocutory injunction in part, but not to the full extent desired. He sought to preserve the status and to protect the parties until the final hearing. The evidence on vital points in the case was conflicting. Each party alleged that the contract was valuable to it, but they differed about its construction, and each claimed that the

other was violating it. While the interstate-commerce law was invoked, it was not so much to attack the entire contract as to deny a certain construction of it, or that certain acts should be done under it. A railroad company which is an interstate common carrier can not enter into a contract with a shipper which constitutes an unlawful or undue preference under the interstate-commerce act. Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U. S. 498 (31 Sup. Ct. 279). Whether or not there is any such discrimination in the present case is not raised or shown with such distinctness as to authorize this court, on exception to the grant of an interlocutory injunction maintaining the status until final trial, to reverse the action of the presiding judge. The rulings made in the headnotes need no elaboration. In two respects the presiding judge fell into error. He could not on that hearing adjudicate finally any question of fact, but could only pass on such questions so far as to determine the propriety of granting or refusing the interlocutory relief sought. Bleyer v. Blum, 70 Ga. 558; Payton v. Ford, 134 Ga. 587 (68 S. E. 300). And also he could not grant a mandatory injunction. Civil Code (1910), § 5499. Under some circumstances, he may grant an order restraining unlawful acts by one or both parties. He may refuse relief to a party who comes into court seeking equitable relief, but who is unwilling to do equity. If he finds that an injunctive order is being used to work wrong or oppression, upon application he may modify or revoke it. But he has not the power, upon such an interlocutory hearing, to command parties to do certain things and to appoint a person to see that they do so. Such affirmative action might be quite desirable, where parties indulge in what the judge terms in his opinion a " factional " controversy, but the law has not made provision for it. Probably the statement of the presiding judge as to his determination of what were the facts was not intended as a finality, and the mandatory feature of the order was an inadvertence. But it is better that they should be modified so as to be in strict accordance with law.

Except as indicated in the headnotes and in this opinion, there was no error in granting the interlocutory order. Direction is given that the presiding judge modify his order so as to make it conform hereto.

*Judgment affirmed, with directions. All the Justices concur.*