### 15580.   WAYNE OIL TANK & PUMP CO. *v.* CLAXTON OIL CO.

The court erred in overruling the plaintiff's motion for a new trial.

(*a*) The contract sued on was a good and valid one, and was not breached by the plaintiff.

(*b*) The telegrams referred to in the motion for a new trial were erroneously admitted in evidence.

(*c*) All oral negotiations between the representatives of the parties preceding the execution of the written contract are to be regarded as merged in and extinguished by it.

DECIDED AUGUST 8, 1924.

Action for breach of contract; from city court of Claxton— Judge Elmore. March 22, 1924.

Wayne Oil Tank & Pump Company, in its petition, alleged: that on June 26, 1922, it entered into a written contract with the defendant, Claxton Oil Company, to sell to it certain property "consisting principally of gasoline tank and pump and fixtures" f. o. b. Fort Wayne, Indiana; that "in compliance with the terms of said contract for said property, and at its express request, as set forth in the contract, this plaintiff, after acceptance thereof on the 1st day of July, 1922, shipped the property purchased by defendant by freight from Fort Wayne, Indiana, consigned to it at Claxton, Georgia; that after said property had been shipped to defendant, said defendant failed and refused to accept same upon arrival and delivery thereof at the point of destination, Claxton, Georgia; that

the defendant still fails and refuses to accept said property or pay this plaintiff, although the amount due thereon has long been due and now remains unpaid." Plaintiff also alleged that when defendant failed and refused to accept said property it stored the same for defendant, to be delivered to it "upon demand therefor and compliance by defendant with the terms of the contract;" and further alleged that because of the breach of the contract by defendant it "has damaged and caused plaintiff a loss of $103.45 in freight and storage charges which the plaintiff paid on said property and which the defendant was obligated to do under the terms of the contract;" that it paid $2.50 for drayage "for hauling said property from the depot to plaintiff's warehouse where the property is stored for defendant." The plaintiff alleged that the defendant had acted in bad faith, and it claimed attorney's fees. It alleged that it had fully complied with the terms of the contract, and asked judgment for the foregoing items, in addition to the principal sum of $461, the purchase price of the property.

Defendant filed a plea in which it denied liability and further alleged "That it is engaged in the business of selling gasoline, kerosene and like products of Claxton, Georgia, and that in the course of its business it frequently furnishes tanks and pumps to dealers who are its customers, free of charge; that about the 14th day of June, 1922, it had a customer who desired a tank and pump such as the one that was ordered from the plaintiff, for immediate use, and it was urgently necessary that the defendant procure such tank and pump without delay, and in order to procure the same it wired the defendant at its Atlanta office on June 14th, 1922, asking if shipment could be made from Atlanta by plaintiff. [Plaintiff?] wired the defendant that it could not be shipped from Atlanta, but could make shipment almost immediately from Fort Wayne, Indiana. On June 17th defendant wired to plaintiff to its Atlanta office for the price on said pump and tank, and on June 19th plaintiff wired the defendant what price was, and June 20th defendant wired to plaintiff to its Atlanta, Georgia, office to ship quick said pump and tank. Defendant relied on said pump and tank being shipped upon the strength of this wire, and heard nothing more of it until June 26th when C. L. Saunders, one of the stockholders and secretary and manager of said company, was in Atlanta, and called to see the agent of the plaintiff and

asked him why shipment had not been made of said tank and pump, but he gave defendant no satisfactory reason for the same not having been shipped. The said Saunders then and there representing the defendant related to the plaintiff by telling its agent who took said order he was R. E. Erwin, district manager, the exact circumstances surrounding defendant's need of said pump and tank, and then and there put the plaintiff under notice that unless shipment could be made at once that he did not desire to sign said written order for the said pump and tank, and would not depend upon plaintiff to furnish the same, and then and there plaintiff assured defendant that shipment would be made on the day said order was assigned; and while the said Saunders was in the office of the said plaintiff in Atlanta, Georgia, and at the time said written order was signed, the said Erwin sent an order by telegram to the plaintiff in Fort Wayne, Indiana, for the said pump and tank to be shipped. Relying upon the promise to ship said tank and pump without delay, and believing that the same had already been ordered by wire, defendant executed the said order in good faith believing that the said pump and tank would be shipped as promised.

. "Defendant alleges further that plaintiff did not ship said pump and tank as soon as it could have been shipped and as soon as it was contemplated by the parties to the said written order.

"Defendant says that plaintiff did not ship pump and tank within a reasonable time, taking into consideration all the facts and circumstances with the transaction, and therefore did not ship in accordance with said order.

"Defendant says that said pump and tank was not shipped until about fifteen days after said order was given, and that in failing to ship sooner plaintiff breached said contract, and is not entitled to recover thereon.

"Defendant alleges further that after waiting several days [?] plaintiff should have shipped and was obligated to ship said pump and tank before the same had been shipped and before anything had been done towards shipping it, he countermanded said order on the 6th day of July, 1922, for the reason that plaintiff had failed to live up to his agreements to make shipment, and proceeded to supply its demand for the pump and tank by other means."

Upon the trial of the case a verdict was rendered in favor of the defendant. Plaintiff filed a motion for a new trial, and, this being overruled, he brought the case to this court for review.

*R. H. Burroughs,* for plaintiff. *P. M. Anderson,* for defendant.

BLOODWORTH, J. (After stating the foregoing facts.) It is apparent from the record in this case that when the representative of the Claxton Oil Company met the agent of the Wayne Oil Tank & Pump Company in Atlanta on June 26, 1922, and the two had a conference, each decided that so far as the sale of the tank, pump and fixtures was concerned, he would "let the dead past bury its dead." This is shown by the fact that they proceeded to draw a written contract in which it was stated that "this proposal of purchase shall not become effective or binding until it is accepted or confirmed by said company [plaintiff] at its home office in Fort Wayne, Indiana;" that "there are no agreements not mentioned herein, and all the terms and specifications have been distinctly understood;" and that "all agreements between the parties hereto are covered by this order, and that same are *not subject to countermand* by the vendee." (Italics ours.) This order contained all the elements of a sale. It identified the articles sold, named the price thereof, and the consent of the parties thereto is shown by their signing it. Civil Code of 1910, § 4106. That each party recognized this as a complete contract is shown also by the fact that in their pleadings each claimed that the other breached it. It is apparent not only from the plea of the defendant, but from the evidence that defendant's representative, Saunders, signed the contract, a duplicate of which was given him at the time, "without apprising himself of its contents otherwise than by accepting representations made by the opposite party," and it does not appear that between him and the other party there existed any "fiduciary or confidential relations," or that "at the time he signed it some such emergency existed as would excuse his failure to read it, or that his failure to read it was brought about by some misleading device or artifice amounting to actual fraud." *Tinsley* v. *Gullet Gin Co.,* 21 *Ga. App.* 512 (2) (94 S. E. 892); *Barnes* v. *Slaton Drug Co.,* 21 *Ga. App.* 580, and cases cited on pages 581, 582 (94 S. E. 896); *Twyman* v. *Avera Loan &c. Co.,* 23 *Ga. App.* 136 (98 S. E. 239). The case of *Arnold* v. *Malsby,* 120 *Ga.* 586 (48 S. E. 132), is somewhat like this one, and in that

case the first headnote is as follows: "All previous verbal negotiations respecting the terms of sale of certain machinery are merged in the subsequent written contract of sale, and are inadmissible to vary or contradict the writing. *Smith* v. *Newton,* 59 *Ga.* 113 (5)." In *Chicago Building Co.* v. *Summerour,* 101 *Ga.* 820 ('29 S. E. 291), Justice Little said: "If he signed the written agreement without reading it, and it did not contain the contract as in fact made, or if he was induced to enter into the agreement by fraudulent promises on the part of the agent, he was only deceived by such promises in consequence of his own neglect to read the terms of the written contract to which he subscribed. The defendant had full opportunity to inform himself as to the terms of the instrument. Had he taken the precaution to do so, he would have been protected against the imposition alleged to have been practiced upon him. His negligent omission to inform himself as to the truth of the representations or their binding force defeats an impeachment of his contract upon grounds as to which the exercise of reasonable care would, in the first instance, have protected him." See also *Equitable Mfg. Co.* v. *Biggers,* 121 *Ga.* 381 (49 S. E. 271); *Butler* v. *Standard Guaranty & Trust Co.,* 122 *Ga.* 371 (50 S. E. 132); *Case Threshing Machine Co.* v. *Broach,* 137 *Ga.* 602 (73 S. E. 1063). When the written order was accepted by Wayne Oil Tank & Pump Company it became a complete contract of sale, binding each party (*Black* v. *Maddox,* 104 *Ga.* 157, 161, 30 S. E. 723), and by its terms not subject to countermand. Notwithstanding this writing it is insisted that the purchaser countermanded the order before the goods were shipped, and for this reason should not be required to pay for them; but "what is writ is writ." Without a lawful cause, "a written contract cannot be abrogated by one of the parties without the consent of the other." *Phosphate Mining Co.* v. *Atlanta Oil &c. Co.,* 20 *Ga. App.* 660 (6), 662 (93 S. E. 532); *Draper* v. *Ga., Fla. & Ala. Ry. Co.,* 21 *Ga. App.* 707 (95 S. E. 16), and cases cited. The defendant further insists that the plaintiff breached the contract by not shipping the goods "in accordance with said order," and "within a reasonable time." To support this contention the defendant relies upon certain telegrams which passed between the parties several days prior to the signing of the written order and a conversation held between the representatives of the plaintiff and the defendant in Atlanta on the day the con-

tract was signed. From what has already been said in the discussion of this case, and from the authorities cited, it will readily be seen that the written contract was made without reference to these telegrams and independent thereof, and that they can play no part in the determination of the case; and therefore they were improperly admitted in evidence. Even if the conversation to which we have hereinbefore referred were not by the express terms of the contract merged therein or extinguished thereby, it would be so considered under the law. *Rauschenberg* v. *Peeples,* 30 *Ga. App.* 384 (118 S. E. 409); *Holman* v. *Georgia Railroad,* 67 *Ga.* 595.

As the contract was a valid one, was not breached by the plaintiff, and could not be countermanded by the defendant, and as the telegrams were erroneously admitted in evidence, the judgment must be            *Reversed. Broyles, C. J., and Luke, J., concur.*