20186. KIGHT *et al. v.* GILLIARD, Tax Commr., *et al.*

SUBMITTED SEPTEMBER 9, 1958—DECIDED OCTOBER 10, 1958.

*Elie L. Holton, D. C. Sapp,* for plaintiffs in error.

*J. W. Waldroup, E. R. Smith, Jr.,* contra.

MOBLEY, Justice. This is a review of a judgment of the Superior Court of Coffee County rendered at an interlocutory hearing on a petition seeking a temporary and permanent injunction and other relief. The trial court granted a nonsuit, denied the temporary injunction, and ordered the plaintiffs to pay the costs of court.

The plaintiffs, alleging themselves to be citizens and taxpayers of Coffee County, brought their petition for themselves and other similarly situated taxpayers against the following Coffee County officials: E. D. Gilliard, tax commissioner; W. N. Burkett, Austin Faircloth, and Elmer Smith, tax assessors; Dan A. Jardine, Reynold Griffin, and J. H. Kight, members of the county board of commissioners; and against E. M. Thompson, superintendent of schools. Later, other plaintiffs were permitted to intervene;

and E. M. Thompson, superintendent of schools, was dismissed as a party on motion of the plaintiffs.

The petition alleged: "That the defendants have originated, with agreement between and among themselves, and have begun to put into effect, an all-inclusive, systematic, arbitrary and comprehensive illegal scheme to increase the assessments of value for ad valorem taxation of all property returned in the office of said tax commissioner in said county, without regard for the determination of, and with no purpose or intent to fix and assess, fair values based on an investigation, consideration and appraisal of the fair market value of the property returned by and assessable against each taxpayer, and with no purpose or intent to equalize assessments and taxes among the taxpayers of said county, but for the purpose of raising additional revenue without uniformity of taxation upon the same class of subjects within the territorial limits of, and subject to taxation within, said county"; that, in carrying into effect said illegal scheme, they arrived at disproportionate, distorted, illegal, void, and unequal assessments of values of property upon the same class of subjects and upon the same kinds of property within the same class arbitrarily and with no intent and purpose to fix equal values and assessments, in various manners set out in the petition; that the scheme and actions of the defendants are illegal and void because of violation of that portion of Article VII of the Constitution of the State of Georgia of 1945, which requires that "All taxation shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax"; and, further, in violation of Art. I, Sec. I, Par. II (Code, Ann., § 2-102) of the Constitution of the State of Georgia, which provides: "Protection to person and property is the paramount duty of government, and shall be impartial and complete"; and also the Fourteenth Amendment to the Constitution of the United States (Code § 1-815), which provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The petition prayed for the following relief: "That defendants be temporarily and permanently restrained and enjoined from further proceeding to carry into effect their scheme to have the valuations of the property of the taxpayers of said county increased and unequally assessed as herein charged, and from compiling a tax digest and transmitting the same to the State Revenue Department of Georgia, and that said county commissioners be restrained and enjoined from levying any tax based on said assessments; that the action of defendants herein complained of be declared illegal, unconstitutional, null and void; and that the said assessments of said tax assessors herein complained of be set aside by appropriate order and decree of this court."

To the petition, the defendants filed their general demurrer and answer. No judgment has been entered on the general demurrer.

After hearing evidence offered by petitioners, the trial judge entered an order granting a nonsuit, revoking and dismissing the temporary restraining order previously granted, denying the temporary injunction and all other prayers of the petitioners, and ordering the plaintiffs to pay the costs of court.

■ A decree assessing costs of court against one of the parties is a final decree, which the trial court is without authority to enter at an interlocutory hearing on an interlocutory matter, in this case the grant or denial of an injunction. *Rosenberg* v. *Wilson*, 154 *Ga.* 625, 115 S. E. 7; *Booker* v. *Scott*, 214 *Ga.* 327 (104 S. E. 2d 416). Accordingly, the trial court erred in ordering the plaintiffs to pay costs of court in this case.

■ Since, on an interlocutory hearing, the trial court is without authority to adjudicate finally issues of fact, but should pass on such questions only so far as to determine whether the evidence authorizes the grant or refusal of the interlocutory relief (*Booker* v. *Scott*, 214 *Ga.* 327, supra; *Florida Cent. R. Co.* v. *Cherokee Sawmill Co.*, 137 *Ga.* 815, 821, 74 S. E. 523; *City of Waycross* v. *Waycross Savings &c. Co.*, 146 *Ga.* 68, 90 S. E. 382; *Milltown Mfg. Co.* v. *Bray & Co.*, 149 *Ga.* 151 (2), 99 S. E. 468), the trial court erred in granting a nonsuit, a nonsuit being a final adjudication of the facts in the case.

■ The sole issue remaining is whether the trial court erred in denying the interlocutory injunction. "The granting and

continuing of injunctions always rest in the sound discretion of the judge, and this power shall be prudently and cautiously exercised, particularly when a whole year's finances of a political subdivision are involved, unless the law and the facts clearly demand such action." *Hutchins* v. *Williams*, 212 *Ga.* 754 (2) (95 S. E. 2d 674). See also Code § 55-108; *Wayne* v. *City of Savannah*, 56 *Ga.* 448; *Hawkins* v. *Intendant &c. of Jonesboro*, 63 *Ga.* 527; *City Council of Augusta* v. *Pearce*, 79 *Ga.* 98 (4 S. E. 104); *Everett* v. *Tabor*, 119 *Ga.* 128 (46 S. E. 72); *McCrory Co.* v. *Board of Commrs. &c. of Fulton County*, 177 *Ga.* 242, 243 (170 S. E. 18); *Kent* v. *Murphey*, 207 *Ga.* 707, 709 (64 S. E. 2d 49).

There is no merit in the contention of plaintiffs that the trial judge failed to exercise his discretion in denying the interlocutory injunction, because the grant of a nonsuit was a ruling as a matter of law that there was no evidence to support the allegations of the petition.

It would be a proper exercise of the trial judge's discretion to deny an interlocutory injunction where there was no evidence to support the allegations of the petition, and an abuse of his discretion to grant the injunction if there was in fact no evidence to support the petition.

The fact that the court denied the injunction after hearing evidence of the plaintiffs without the introduction of evidence by the defendants was of no consequence. The defendants were called for cross-examination, and their evidence supported the conclusion on the part of the court that the tax assessors from their own knowledge, from information available, and from actual examination of the property had arrived at what in their opinion was a fair valuation of the property for tax purposes and had assessed it accordingly.

It is the duty of the board of tax assessors, ". . . to see that all taxable property within the county is assessed and returned at its just and fair valuation and that valuations as between individual taxpayers are fairly and justly equalized. . ." Code (Ann.) § 92-6911. This does not require the tax assessors to use any definite system or method, but demands only that the valuations be just and that they be fairly and justly equalized among the individual taxpayers (*Hutchins* v. *Williams*, 212 *Ga.*

754 (4), supra), ". . . according to the best information obtainable. . ." Code (Ann.) § 92-6913. The tax assessors may use any system, method, cadastral survey, books, available lists of valuations of types of property, city valuations or other instruments or other information obtainable, provided said information is actually used by them as the best information available in their fixing of just and fair valuations of the property assessed, and provided that the taxation as between individual taxpayers is justly and fairly equalized. *Hutchins* v. *Candler,* 209 *Ga.* 415 (2) (73 S. E. 2d 191); *Hutchins* v. *Howard,* 211 *Ga.* 830 (89 S. E. 2d 183).

Although the tax assessors used the valuations fixed by the City of Douglas on real property within the city and a schedule of valuations on automobiles furnished by the State Revenue Department in fixing and assessing valuations on such property, they testified that they used these sources as the best information obtainable and as a guide in fixing valuations, which they were justified in doing. Likewise, the evidence disclosed that, in assessing the value of rural land, the tax assessors classified it as follows:

"Land, cultivated: good first grade, $50.00 per acre; hilly erosion, $25.00 per acre; sandy, $10.00 per acre. Land, timber: best, $75.00 [per acre]; partly cut, $40.00 [per acre]; cut close, $20.00 [per acre]; sand ridge, $5.00 [per acre]."

The tax assessors testified: "That was more or less a schedule that we went by," and that each taxpayer's land was located and identified and physically examined before they placed a valuation on it, generally classifying and assessing it according to the above schedule. The evidence as to the method followed and in others complained of fails to support the allegations that the assessments made by the tax assessors were arbitrary, distorted, etc., and were made with no intent to fix equal assessments.

There was evidence that the tax assessors did decide to make a revaluation of the taxable property in the county; that they consulted and advised with the county commissioners; that, upon the recommendation of the tax assessors, the county commissioners employed one of the tax assessors, Austin Faircloth, to study tax matters; that Faircloth visited other counties and

450

studied their methods and plans; that the tax assessors made a careful and detailed study of the taxable property in the county; and that, in fixing and equalizing the valuations of the property, the tax assessors used the best information obtainable. The mere fact that valuations generally were increased does not render the method of valuation null and void where there was evidence that the valuations were fixed by the tax assessors and that the assessments were fair and just and equalized as to individual taxpayers.

The evidence fails to support the allegations in the petition of an illegal scheme or agreement among the defendants to raise the assessments of values for ad valorem taxation of all property in the county without regard to a determination of the fair and just valuation of the property and with no intent or purpose to equalize assessments among the individual taxpayers of the county. Hence, the court did not err in refusing to grant an interlocutory injunction and in revoking the temporary restraining order.

*Judgment affirmed in part and reversed in part.. All the Justices concur.*