[No. 4929. Decided March 11, 1904.]

THE STATE OF WASHINGTON, *Respondent*, v. JOSEPH STOCKHAMMER, *Appellant*.[1]

CRIMINAL LAW—TRIAL—SEPARATION OF THE JURY—CONSENT OF DEFENDANT. A case will not be reversed because of the separation of the jury without the consent of the defendant, when the counsel for defendant consented thereto in the presence and hearing of the defendant.

SAME—ADMONITION AS TO DUTIES UPON ADJOURNMENT. It is not prejudicial error to fail to admonish the jury as to its duties on each adjournment where the admonition had been once given.

EVIDENCE—CONCLUSION OF WITNESS. It is not error to sustain an objection to a question calling for the conclusion of the witness as to the feeling of another person which prompted an act, where the witness was permitted to testify to the act, since that fact was all he could properly testify to.

CRIMINAL LAW—MOTION FOR ACQUITTAL—SUFFICIENCY OF EVIDENCE. Where there was sufficient testimony introduced by the state to warrant a conviction if uncontradicted, a dismissal or verdict of acquittal should not be directed.

HOMICIDE—EVIDENCE OF DEFENDANT'S INSANITY—COMPETENCY UNDER PLEA OF SELF-DEFENSE. In a prosecution for a homicide it it is not prejudicial error to exclude evidence of an adjudication of insanity and a discharge from the hospital as improved, where there was no plea of insanity, the defense being self-defense, especially where defendant was afterwards allowed to prove that he had been confined in the asylum on a charge of insanity.

HOMICIDE—SELF-DEFENSE—NECESSITY OF WARNING — INSTRUCTIONS. In a prosecution for a homicide an instruction as to the right of the defendant to take the life of another in self-defense is properly qualified by adding that it was the duty of the defendant to first warn his assailant to desist from his attack, unless he was justified in believing that he had no time to give such warning.

SAME—REASONABLENESS OF BELIEF THAT LIFE IS IN DANGER. An instruction as to the right of self-defense if the defendant believes his life is in danger, is properly qualified by adding "if he has reason to believe" in such fact, since it is only a reasonable belief that will warrant the act.

[1] Reported in 75 Pac. 810.

Appeal from a judgment of the superior court for Chehalis county, Irwin, J., entered November 25, 1902, upon a trial and conviction of the crime of manslaughter. Affirmed.

*C. W. Hodgdon* and *Sidney Moor Heath*, for appellant.

*J. A. Hutcheson*, for respondent.

DUNBAR, J.—The appellant was charged in the information with murder in the first degree, was convicted of manslaughter, and sentenced to two years in the penitentiary.

The first assignment is that the court erred in allowing the jury to separate without the consent of the defendant personally. It is conceded that the consent was given by the counsel of appellant, but the contention is that this is not sufficient. Section 6947, Bal. Code, provides that juries in criminal cases shall not be allowed to separate except by consent of the defendant and the prosecuting attorney. Appellant cites *State v. Place*, 5 Wash. 773, 32 Pac. 736, and *Brown v. State*, 38 Tex. 483, in support of the contention that the conditions of the statute have not been complied with. *State v. Place* does not in any manner support such contention, as it does appear in that case that there was no consent given by either appellant or counsel. *Brown v. State* was a case where the defendant was not present during the trial, he being in an adjoining room, sick, having been removed by the instruction of his attending doctor during the argument; and, while the court in that case incidentally held that the attorney for the defendant could not consent to the jury's separating, under the particular provisions of the code, it was also said that, even if the defendant himself had consented, the case would still have to be reversed, for the reason that

the separation was not such a separation as was provided for by the code. But we think there are no cases which hold, under the provisions of a statute such as ours, that the consent of the counsel, the defendant being present and hearing the consent announced by the court, is not sufficient. In fact, we think it is much the better practice, and is a more orderly proceeding, and a consent which is more likely to be intelligently given, than a mere formal consent stated by the defendant. By reference to *State v. Holedger,* 15 Wash. 443, 46 Pac. 652, it will be seen that the procedure in this case was exactly in accordance with the suggestion of this court made to the trial judges of the state. It will be noted that, in that case, the consent was obtained from appellant's counsel, and the court refused, even under the circumstances of the case, to reverse the judgment for that alleged error alone, but said:

"The appellant complains in his ninth assignment that the court erred in asking counsel for appellant, in the presence and hearing of the jury, if they had any objection to the separation of the jury. In the absence of any proof to the effect that the appellant was prejudiced in any way by the action of the court, we do not feel like reversing a case on this ground alone; but we desire to take occasion to say that considering the difficulty of making such a showing of injury by the party who claims to be aggrieved, we think it is a practice which should not be indulged in by trial courts, because, as appellant complains, if they did entertain any objection to the separation of the jury they were called upon to so state in the presence of the jury, and would thereby run the risk of incurring the displeasure of some juror. The court could very easily call counsel to him and ascertain privately and without the knowledge of the jury whether there were any objections to their separation."

This course having been pursued by the trial court in this case, no error was committed.

The next contention is that the court allowed the jury to separate without being admonished and instructed as to its duties. It is conceded that the court did, upon the first separation of the jury, give them full admonition concerning their duties, as provided by the statute; but that, upon the next separation, the admonition was not given. The admonition having been once given, it was not necessary to repeat it; and, especially as no request was made therefor by the appellant, it will not be presumed that he was prejudiced by the failure of the court to give repeated admonitions.

It is claimed that the trial court erred in sustaining respondent's objection to the following question, proposed by appellant's counsel on cross-examination: "Mrs. Stockhammer, is it not true that your brother had such a bitter feeling against Mr. Stockhammer, that, in giving you a check, he refused to write it as Maria Stockhammer, but wrote it as Maria Eigner?" Objection was sustained to this question, and we think properly sustained, as calling for a mere opinion of the witness as to the motives of the deceased in preparing the form of a check. All that the witness could properly testify to was the fact, and it was for the jury to determine from such fact the feeling which prompted it, and the following question, viz., "Is it not true that your brother, in giving you a check, gave it to you as Maria Eigner, instead of Maria Stockhammer?" was afterwards asked and answered without objection.

The fourth assignment is that the court erred in refusing to allow appellant's motion to dismiss, or direct a verdict at the close of plaintiff's testimony. No error was committed in this respect, as there was sufficient testimony introduced by the state to warrant a conviction, if uncontradicted.

The fifth assignment is that the court erred in sustaining the objection of plaintiff to the introduction of evidence concerning the insanity of defendant. The evidence was a certified copy of the record of Pierce county, including a complaint in insanity, and an order adjudging defendant insane made by the superior court of Pierce county, and also a discharge from the hospital for the insane as improved. It is insisted by the appellant that it may be shown, in aid of the theory of present insanity, that insanity existed at some prior time. This testimony was objected to as being irrelevant, immaterial, and inadmissible, unless it should be followed up by showing that the condition of insanity still exists, and did exist at the time of the shooting. There was no plea of insanity in this case, the defense being self-defense, no attempt to show that insanity existed at the time, and the counsel for the defense objected to making such a showing, by stating that a condition once shown to exist is presumed to exist until the contrary is shown. This presumption would, in any event, be destroyed by the testimony which the counsel for the defense was attempting to offer, which showed that the defendant had been discharged from the asylum. But, in any event, under the proofs and claims made by the defendant in this case, the testimony was inadmissible; and, even if it were admissible, no prejudice obtained, from the fact that the defendant afterwards was allowed to prove that he had been confined in the asylum in Pierce county on a charge of insanity.

Errors numbers six and seven are based on the modification or qualification attached by the court to instruction No. 15. Instruction No. 15 was as follows:

"The court informs you that, in law, the defendant, if he was where he had a right to be, if the deceased advanced upon him in a threatening manner or induced de-

fendant to believe that he was in danger of life or limb, the defendant need not retreat, but had a right to stand his ground and defend himself. When a man is where he has a perfect right to be, and deceased so acts under such circumstances as to induce in him a reasonable and honest ground of apprehension that he is in danger of life or limb, he may at once use necessary force to prevent the threatened blow, even to the extent of taking his life."

Then the court announced the qualifications which are objected to, as follows:

"Gentlemen: I qualify this instruction No. 15 in this way, that although defendant may have been where he had a right to be, and deceased was advancing toward him in a threatening manner, still he would have no right to take the life of deceased without first warning him to desist from his attack, unless you find from the evidence that defendant was justified in believing that he had not time to give such warning."

We think that this was a proper and judicious statement of the law. No man should be permitted to take the life of another without an urgent necessity exists, for the right of self-defense is based upon the necessity of protecting one's self; and, if one's life could be protected and the necessity of killing the adversary obviated by a warning, such warning should be given. It does not appear to us that the modification of this instruction was made more prominent than any other part of the instruction.

In assignment eight it is also contended that the court erred by the insertion of the words "and has reason to believe," in instruction No. 18, the whole instruction being:

"The court further instructs you that a man need not wait until the blow is actually struck before he has a right to act upon appearances and defend himself. It is enough if he honestly believes, and has reason to believe,

from the attitude, conduct and manner of the deceased, that he was in danger of his life or of great bodily harm." If the appellant's objection should obtain, that the court erred in inserting the words "and has reason to believe," all that a defendant would be called upon to do, to establish a complete defense, would be to assert that he believed that he was in danger of life or of great bodily harm. This must not be a blind belief, but must be a belief founded upon circumstances, and it is for the jury to determine, under all the circumstances of the case, whether it is a reasonable belief. The rule is laid down by 1 Bishop's New Criminal Law, § 305, as follows:

"If, in the language not uncommon in the case, one has *reasonable cause to believe* the existence of facts which will justify a killing,—or, in terms more nicely in accord with the principles on which the rule is founded, if without fault or carelessness he does believe them,—he is legally guiltless of the homicide; though he mistook the facts, and so the life of an innocent person is unfortunately extinguished."

So that it will be seen that, if a person acted without reason, he would not be acting without fault or carelessness. We think the whole instruction of the court was favorable to the appellant.

We perceive no error of the court in refusing instructions offered, all the instructions which properly stated the law having been given in another form by the court. Nor can the last assignment—that the court erred in denying defendant's motion for a new trial—be sustained.

The cause was tried without error, and the testimony was sufficient to sustain the judgment. It will therefore be affirmed.

HADLEY, ANDERS, and MOUNT, JJ., concur.