ATLANTA COCA-COLA BOTTLING COMPANY *v.* SHIPP.

No. 7430.  JULY 19, 1930.

*Harold Hirsch, D. F. McClatchey Jr., John P. Stewart, T. J. Long,* and *W. B. Cody,* for plaintiff in error.
*Sims & Berman,* contra.

HILL, J. This case is before the Supreme Court on a question certified by the Court of Appeals, as follows: "In a suit against a bottling company on account of alleged personal injuries resulting to the plaintiff from swallowing particles of glass contained in a bottled drink, bottled and sold by the defendant company and purchased in due course by the plaintiff, where the proof on behalf of the plaintiff was sufficient to authorize a finding in his favor, and where the defendant sought to exculpate itself from liability by showing proper care and diligence on its part in the preparation, handling, and bottling of the product, by showing the kind of machinery used and the method of preparing and handling the product, including inspection and reinspection of the product for the safety of its customers, was evidence that the women inspectors employed by the defendant for thus examining the product were persons of color admissible as a circumstance which the jury would have the right to know and consider, and which counsel for the plaintiff would have the right to comment upon as illustrating the efficiency or lack of efficiency of such inspectors, where such inspectors were not introduced as witnesses, and neither party sought otherwise to establish their efficiency or lack of efficiency?"

■ The question propounded by the Court of Appeals is based upon the fact that the proof on behalf of the plaintiff was sufficient to authorize the jury to find in his favor, and that the defendant sought to exculpate itself from liability by showing proper care and diligence on its part in the preparation, handling, and bottling of the product, by showing the kind of machinery used, and the method of preparing and handling the product, including inspection and reinspection of the product for the safety of its customers. In the argument before this court learned counsel for the defendant in error argues questions apparently from the record as to what transpired on the trial of the case, and the rulings there made. But this court has ruled more than once that it will answer only the exact questions propounded by the Court of Appeals, without regard to the record. Thus in *Georgian Co.* v. *Jones,* 154 *Ga.* 762 (115 S. E. 490), it was said: "In giving instructions upon the questions certified by the Court of Appeals to this court, we will in all cases confine ourselves to the precise point involved in the question propounded, and make answer only to the exact question asked, without reference to what might be a possibly different answer were a differ-

ent question, or even the same question couched in different language. This rule must be followed, because it is the right and duty of the Court of Appeals to finally adjudicate; and in almost every question it is apparent that the Court of Appeals has already decided, as it must do, some of the facts and some of the principles of law to be established in the particular case. The Court of Appeals knows the precise point as to which they desire instruction, and there can arise no instance in which this court would be justified in making answer to any other than the exact question propounded." And see, to the same effect, *Morgan County Bank* v. *Poullain,* 157 *Ga.* 423 (121 S. E. 813, 33 A. L. R. 592).

■ The precise question asked by the Court of Appeals is, was evidence that the women inspectors employed by the defendant for examining "the product" were "persons of color" admissible as a circumstance, etc.? Taking the question solely as asked by the Court of Appeals, we do not see how the question as to whether the inspectors in the instant case were "persons of color" would be admissible, even as a circumstance which the jury would have the right to know and consider, and which counsel for the plaintiff would have the right to comment upon as illustrating the efficiency or lack of efficiency of such inspectors, where such inspectors were not introduced as witnesses, and neither party sought otherwise to establish their efficiency or lack of efficiency. Whether the inspectors were white or black, or of any other color, would have no relevancy to the case. The law presumes "that every man, in his private and official character, does his duty [and] until the contrary is proved, it will presume that all things are rightly done, unless the circumstances of the case overturn this presumption." *Draper* v. *Ga., Fla. & Ala. Ry. Co.,* 21 *Ga. App.* 707, 711 (95 S. E. 16). See also 22 C. J. 146, § 81. The law will not presume that because a person is a member of one race or another race he is competent or incompetent. Whether a person performing a duty imposed by law is a Caucasian, or an African, a Chinaman, or Japanese, or an Indian, is immaterial. The law takes no care as to color. The law knows no color; indeed, it is color-blind. The goddess of justice is represented with bandaged eyes in order that she may neither see nor know either suitor, as she holds the scales of justice with an even and impartial hand. It is a matter of historical knowledge that there are members of every race who are efficient

along certain lines, and there are others who are inefficient. But, whatever the color, it has no bearing on the question as to their efficiency or inefficiency, as individuals, in a certain line of duty. We hold that no evidence is admissible which is not relevant, and we do not see how this evidence that certain inspectors were "women of color," was admissible, unless it logically tended to prove the defendant's negligence, and we do not see how this would be so, as a matter of law.

In Mo. Pac. Ry. *v.* Christman, 65 Tex. 369, it was held: "From the evidence in the case, and from the brief of appellee, the inference is very strong that it was asserted in the court below that the mere fact that the brakemen were negroes was a fact to which the jury might look to determine their competency or incompetency. We know of no rule of law which sanctions such a holding. The competency or incompetency of no one, to perform a given duty, in the absence of some law so declaring, can be made to depend on color or race; but in each case, this must depend upon intelligence to know, and ability and disposition to perform, the duties pertaining to any given position. Proof of facts which show the nonexistence of such intelligence, ability, or disposition must be made by the party who asserts its nonexistence. The law does not presume it because the person whose qualifications may be the subject of investigation may be of one or another race or color; nor is a jury at liberty to infer it from such fact. If, however, this were not true, and the rule were that a jury might infer that a person was an unsuitable person for brakeman from the fact that he was a negro, then such inference would have to be based on the fact that all negroes are wanting in intelligence, ability, or disposition to perform faithfully and safely the duties of brakemen." If the foregoing reasoning is sound, and we think it is, it can not be said that the duties of a brakeman, upon the faithful performance of which depends the safety of all those who ride upon his train, involve less responsibility than the duty of the inspectors in the instant case. And it can not be said that the persons of "color" we have mentioned were presumably wanting in intelligence and competency and would be incompetent to inspect a bottled drink, a duty which requires only good eyesight and attention to duty. In State *v.* Lem Woon, 57 Or. 482 (107 Pac. 974, 978, 112 Pac. 427), it was said: "The defendant attempted to show the revengeful dis-

position of the Chinese people as a race, to the effect that 'when a trouble breaks out between the two classes, or factions of the same class, and one man is injured, he does not care particularly whether he gets the assailant or the person who particularly injured him, but is satisfied if he brings injury upon one or the other side or class or faction.' . . The evidence offered relates to Chinese customs or characteristics, and applies to the race, and not to the individual. But a rule that would admit evidence of such characteristics or customs of a class or a race to affect the credibility of an individual witness of that class or race can not apply to the Chinese more than to the Negro, Indian, or any other people who practice them. . . To admit such evidence would be a dangerous precedent. Testimony should be received only under legal principles and rules of evidence. . . It certainly would be incompetent to show the reputation or trait of character of a class or race of people as to matters that might discredit the race, for the purpose of discrediting the testimony of an individual of that race. Each witness should stand or fall by his own character, motives, or customs, and not that of his race." In Fonville v. State, 91 Ala. 39 (8 So. 688), it was said: "For the purposes of a trial, the State admitted that two absent witnesses summoned by defendant, if present, would testify to certain stated circumstances. . . During the examination of the witnesses the solicitor inquired of one if he was acquainted with the two absent witnesses concerning whom the admissions had been made by the State, and, if so, 'were they white or colored.' . . To inquire and prove that the absent witnesses were negroes certainly was irrelevant unless the court judicially knew the color of the witnesses affected their credibility. If it was judicially known that as a race the witnesses were prima facie unworthy of belief, the question was both relevant and legal. We can not judicially affirm of any race of people of whatever color or previous condition . . that they were 'always liars.'" In Sills v. State, 2 Ala. App. 73 (57 So. 89), it was held: "In a prosecution for homicide, questions asked of a witness on cross-examination as to the race or color of another witness for the State . . were properly disallowed." In Woey Ho v. U. S., 109 Fed. 888, 890, it was said: "All people, without regard to their race, color, creed, or country, whether rich or poor, stand equal before the law." And in Hampton v. State, 88 Miss. 257 (40 So. 545), it

was said: "Mulattoes, Negroes, Malays, whites, millionaires, paupers, princes and kings, in the courts of Mississippi, are on precisely the same equal footing." We conclude from all the foregoing that the first question propounded by the Court of Appeals must be answered in the negative.

■ The Court of Appeals asks this additional question: "If it should be answered that the evidence indicated in the question heretofore certified by this Court to the Supreme Court was inadmissible as a fact or circumstance which the jury would have the right to know and consider as illustrating the efficiency or lack of efficiency of the defendant's inspectors, but if such testimony for some other reason, such, for instance, as a means of testing, on cross-examination, the knowledge of the defendant's witness, and if such testimony was admitted generally, without limiting or restricting the purpose of its admission, would counsel for plaintiff have the right, in his argument before the jury, to comment upon the race and color of the inspectors as a fact or circumstance illustrating their lack of efficiency?" Having held in the preceding division that the evidence with respect to the color of the inspectors was not admissible for the purposes stated, we are of the opinion that comment by counsel for the plaintiff in his argument before the jury upon such evidence as illustrating their lack of efficiency would not be proper. Of course, as a general rule, great latitude should be allowed counsel in making comments to the jury upon evidence which has been admitted, but there must be some relevant evidence upon which to base an argument or comment; and to permit counsel to comment upon the race and color of the inspectors of the defendant as a fact or circumstance illustrating their lack of efficiency, when there is no evidence upon which to base such argument or comment, manifestly would be improper. In *Lockett* v. *Mims,* 27 *Ga.* 207, 210. Judge Lumpkin said: "We do not know that more could be said, as to the proper conduct of counsel in arguing causes. . . To depart from the testimony, much more, voluntarily to prevert or misrepresent or to add to it, is a great wrong." In *Moore* v. *State,* 10 *Ga. App.* 805, 811 (74 S. E. 315), it was said: "In our opinion, therefore, the question in every case turns upon whether the nature of the argument is such that it is manifestly improper and prejudicial to the rights of the opposite party. If the nature of the remark is such that it . . could not

have affected the result, the error would be harmless, and would afford no ground for a new trial. For this reason, if the argument was directed to some collateral matter not directly affecting the guilt or innocence of the accused in a criminal trial, though the argument might be improper, the error would seem to be immaterial, though in some jurisdictions it has been held to be reversible error. On the other hand, if the statement is an expression of the personal opinion of the prosecuting attorney in a criminal case that the defendant is guilty, this is error, and it must be presumed to be prejudicial error, · . . or if the argument is such, although deducible from some of the evidence, as to address itself unfairly to passion and prejudice, as in the *Farmer* case, supra, this, if objected to, would afford ground for a new trial, because the argument is not legitimate." In the *Farmer* case, 91 *Ga.* 720 (18 S. E. 987), the argument was: "This is only one of the many cases where the rich landlord shoots down a poor tenant, and it should be stopped." Also, "Old man Farmer said he had enough trouble on his hands. Yes, gentlemen of the jury, he has. This is the second one of his boys who has committed the offense of murder, and the county demands at your hands that these murderers be convicted and hanged." Also "Two other sons of old man Farmer are murderers." In *Hoxie* v. *State,* 114 *Ga.* 19, 21 (39 S. E. 944), this court held that the following argument was improper: "Talk about defendant being married to this woman! Negroes, as a rule, are of a low moral status; they care nothing about the marriage relation; they just take up with each other and stay until they get tired or find some other one they like better, and go off and take up with another, and never think about marriage." To allow counsel for the plaintiff to argue to the jury the inefficiency of the negro race without any evidence as to the efficiency or inefficiency of the colored race, in a suit based upon alleged negligence of the employers of such colored people, would be to allow an argument outside of the evidence, and could only have the effect to prejudice the minds of the jury against that race. As already stated, if there was no evidence to authorize such comment and argument, it was improper to make it, and it was calculated to influence and prejudice the jury against the defendant.

So we arrive at the conclusion that both questions propounded by the Court of Appeals should be answered in the negative.

*All the Justices concur, except Beck, P. J., dissenting.*

RUSSELL, C. J., concurring specially. I concur in the judgment. I concur in the main but not altogether in the reasons supporting the judgment in the case at bar. However, cases may arise in which these reasons would not be applicable under a different state of facts, which can well be imagined. I do not think anything said in the opinion in this case is in conflict with the case of *Wolfe* v. *Georgia &c. Co.*, 2 *Ga. App.* 499 (58 S. E. 899), in which it was held that the courts of this State take judicial cognizance of the comparative social status of white and colored peoples. The opinion of the court in this case recognizes that the case at bar is distinguished by its facts from the ruling in the *Wolfe* case, supra.