[No. 25498. Department One. May 23, 1935.]

THE STATE OF WASHINGTON, *Respondent*, v. GEORGE MOORE, *Appellant.*[1]

[1]Reported in 45 P. (2d) 605.

*John J. Sullivan, A. A. Seijas,* and *Frank Lonergan,* for appellant.

*Warren G. Magnuson* and *Paul Coughlin,* for respondent.

BEALS, J.—George Moore was charged by information with the crime of murder in the first degree, in that he, in King county, Washington, on or about June 13, 1933, with premeditation, shot one Frank Ray, causing his death. A lengthy trial resulted in a verdict of murder in the second degree, and from a judgment and sentence on this verdict the defendant has appealed.

It appeared on the trial that appellant, together with one Sydney Brunn, operated a resort in the city of Seattle known as the "Pom Pom Cafe Club," and that, very late on the day of the killing, the deceased, together with two of his friends, named Smith and Cooper, went to the resort, where they arrived after most of the evening's patrons had departed. Appellant testified that Ray came into the office, where appellant was counting the day's receipts, and demanded money; that, upon appellant's refusal to give him any, Ray, who had been drinking, became abusive and advanced on appellant, with a manifest intent, as testified by appellant, to attack and rob him; that Ray refused to stop on being warned, whereupon appellant fired two shots, both of which struck Ray, one which passed through his chest causing his death.

Appellant's story indicated that he had shot in self-defense, and he sought acquittal of the charge upon that ground. He assigns error upon the refusal of the trial court to give certain instructions which he requested, upon the overruling of certain objections which he interposed to questions propounded by the prosecuting attorney to certain witnesses called on

behalf of the state, which questions appellant contends amounted to cross-examination by the prosecutor of his own witnesses, upon the rejection of certain testimony offered by appellant, and finally, upon alleged misconduct on the part of counsel for the prosecution.

On the trial, the state called as a witness on its behalf Albert Smith, one of the men who had accompanied Ray to appellant's resort on the evening of the killing. At the outset, the prosecutor stated that he called Smith as an adverse witness, to which counsel for appellant objected; whereupon the court instructed the jury to disregard the remark of counsel for the prosecution. Appellant assigns error upon the prosecutor's statement, but in view of the prompt instruction of the court to the effect that the jury would disregard the same, we find no possible prejudicial error therein.

Later on, in the course of the examination of Smith, counsel for the state claimed surprise at the testimony of the witness and stated that, at the proper time, he would present the matter to the court. Appellant's counsel thereupon remarked that he thought the jury should be excused and the matter gone into at that time. After argument, the court stated that the matter which had been under discussion was a question of law for the court to decide, and that the jury would ignore the argument. We find no error or prejudice to appellant in this incident, upon which appellant also relies on this appeal.

At other times in the course of the examination, counsel for the state propounded questions to which appellant objected upon the ground that the prosecutor was seeking to cross-examine his own witness, but careful examination of the record convinces us that appellant's criticisms of the method followed

by the prosecutor in conducting his examination are without merit.

The circumstances here disclosed fall well within the principle concerning which this court, in the case of *State v. Sills,* 113 Wash. 497, 194 Pac. 580, used the following language:

"The relations of the state to the witnesses it may introduce is different from that of a private party. The state has no partisan ends to serve. It has as much interest to clear the innocent as to convict the guilty, and may, therefore, produce for use all witnesses, of whatever character, whose testimony may shed light upon the investigation and aid the jury in arriving at the truth. It follows that the state is not to be prejudiced by the character of the witnesses it calls. The ascertainment of the truth is the object of the prosecution. To seriously consider as error the so-called impeachment by the state of its own witness, would be to lend assistance to the obstruction of justice."

Appellant also contends that other witnesses for the state were subjected to cross-examination by the prosecuting attorney, but we are satisfied that appellant's contentions in this regard are without merit. In this connection, our holding finds support in the recent cases of *State v. Cowling,* 161 Wash. 519, 297 Pac. 172, and *State v. Fry,* 169 Wash. 313, 13 P. (2d) 491.

Appellant next contends that the trial court erred in sustaining objections to testimony which he sought to introduce concerning the quarrelsome disposition of the deceased. It appeared that Ray was a boxer, and that he had some reputation as a bad man. Such evidence would, of course, be proper in so far as appellant knew of Ray's reputation prior to the killing and was influenced thereby in believing that he was in serious danger and that it was necessary for him to protect himself by promptly proceeding to extreme

measures. In so far as the testimony sought to be introduced concerned specific instances indicating that Ray was a dangerous man, of which appellant was ignorant, he could not have been influenced thereby. Appellant was properly permitted to introduce a great deal of evidence which tended to show that Ray was quarrelsome and at times dangerous, some testimony having been introduced which indicated that the deceased had engaged in certain specific altercations. We fail to find an instance where competent testimony was by the trial court rejected.

Appellant next contends that a typed record, consisting of over forty pages, containing statements made by appellant in the presence of certain members of the police department of the city of Seattle, the prosecuting attorney and his deputy, and appellant's own counsel, should have been admitted in evidence. One of the police officers, testifying on behalf of the state, detailed certain of the statements made by appellant. On cross-examination, the witness stated that he had seen a copy of the transcript of the statements made by appellant concerning the shooting.

In cross-examining the captain of detectives, appellant's counsel apparently started in to read the transcript, whereupon the prosecuting attorney objected, stating that, while appellant's counsel could properly ask the witness if appellant had not made certain specific statements, it was not proper to read the entire transcript. After some further reading of the statement by appellant's counsel, and answers by the witness to the effect that appellant had made the statements which his counsel read from the transcript, appellant's counsel stated that he proposed to read the entire statement and ask the witness if it truthfully stated what had occurred at the interview above referred to. The court then asked appellant's counsel:

"The question you propose to ask is reading the statement from first to last, then asking this witness if that is not what was said?"

to which appellant's counsel replied in the affirmative; whereupon the court sustained an objection, but added: "That does not bar any specific inquiry you desire to make." The matter had already been gone into at considerable length, and manifestly appellant was granted every right of cross-examination to which he was lawfully entitled.

Appellant next contends that he was prevented from showing that the deceased suffered from syphilis, and that appellant at the time of the shooting knew that the deceased was so afflicted, and was aware that, for this reason, Ray, when under the influence of liquor, was more dangerous and less responsible for his acts than would otherwise have been the case. While at one time the trial court tentatively rejected some testimony which appellant offered as to Ray's diseased condition, appellant himself, upon being recalled to the stand, testified that Ray had told him that it was his "condition" that had caused him to do something for which he apologized to appellant, and that Ray then stated "that between the liquor and syphilis that he had, and he says mixing them he got crazy." We cannot find that any competent testimony offered by appellant in this connection was finally rejected, it appearing that, on the contrary, it was admitted.

Appellant vigorously contends that the trial court erred in refusing to give certain instructions which appellant requested. By the first of these, the court was requested to instruct the jury that, if appellant had reasonable grounds for apprehending that the deceased was about to attack him, then appellant, in deciding upon the degree of force necessary to resist such an attack, was entitled to take into considera-

tion attacks which he knew the deceased had made upon other persons. The court instructed the jury fully upon this phase of the evidence, explaining clearly and forcibly that previous quarrels between Ray and other persons and Ray's conduct on such occasions, if known to appellant before the killing, might be considered by the jury, together with all the other evidence in the case as bearing upon appellant's state of mind at the time of the killing and as indicating whether or not appellant at that time had reason to fear bodily harm. The court again instructed the jury that they should determine from the evidence appellant's state of mind at the time he shot Ray; and that, in this connection, they might consider the reputation of the deceased as a violent and dangerous man, if appellant knew of such a reputation. Certainly, in connection with this phase of the evidence, appellant's rights were fully protected by the instructions given by the court.

Appellant requested the court to give a long instruction concerning the law of self-defense and homicide justified upon that ground. The court fully and fairly instructed the jury upon this matter, often using the exact words contained in the instruction requested by appellant. In some particulars, the instructions given by the trial court in this connection seem more favorable to appellant that the instruction which he himself requested. Certainly, no claim of error can be based upon the court's failure to give the instruction in the exact form requested by appellant.

Appellant next contends that the trial court should have given two instructions requested by him to the effect that, if the jury found that, after the shooting, appellant made false statements as to what had occurred, this "would have no bearing whatsoever upon his right to kill in self-defense," and, as set forth

in the next requested instruction, such false statements should be considered by the jury only for the purpose of testing appellant's credibility as a witness. Why the jury should have believed that, if they found that appellant had lied in statements he made after the killing, this would have had any bearing upon the question of appellant's right to defend himself against the threatened assault by Ray, concerning which appellant testified at length, is not explained. The court instructed the jury fully and clearly concerning the law applicable to the case presented. In so far as the two instructions now under discussion were proper, the substance thereof was given by the court.

Finally, appellant bitterly complains of what he characterizes as misconduct on the part of counsel for the state, which he contends prevented him from having a fair trial and calls for reversal of the judgment from which he has appealed. He cites something over a dozen instances of which he complains. The first one may be briefly stated as follows:

Counsel for the state, in examining his witness, Albert Smith, above referred to, asked the witness concerning advice given him by one of appellant's counsel "about remaining where you were," the witness being in hiding. Appellant's counsel objected, and the jury was excused while the matter was argued at length. The court overruled the objection, whereupon the witness answered: "He advised me to return." Counsel for respondent then asked the witness: "That, however, is not the story you told the police on the twenty-fourth, is it?" to which the witness answered: "I think it is."

The incident had some further ramifications, but it would appear that, instead of resulting to appellant's prejudice, he had rather the advantage of the exchange. Certainly, it cannot be contended that coun-

sel was guilty of misconduct in propounding a question to which the court overruled an objection. If there was error, it was on the part of the court, not of counsel.

Appellant next complains of the following, which occurred during the cross-examination of Captain Yoris, of the Seattle police, called as a witness for the state. In his brief, appellant makes a general statement that it had been insinuated that he, after talking to his attorney, had changed his story as to what happened at the time of the killing. It is certainly true that appellant did at different times give greatly varying accounts of what had happened. In his brief, appellant quotes the following as an example of misconduct:

By appellant's counsel during cross-examination of Captain Yoris:

"Q. I will ask you if it is not a fact that I came to your office on the afternoon before this statement was given and asked permission to see Mr. Moore and you gave it to me? A. That is right. Q. And that I told you at that time that I was going up and tell him to come clean and tell you the truth? A. That is a fact. Q. And I will ask you if it is not a fact that in less than five minutes I was back again and told you he had told me he would tell the truth and if you would bring him down he would tell it to you? A. Yes, it was a very short time. Q. At any time prior to the time I saw Mr. Moore had anyone representing him been allowed to see him, any counsel? A. No, they had not."

The questions quoted were all propounded by appellant's own counsel, and we are at a loss to understand appellant's argument that the foregoing indicates "concerted conduct of counsel for plaintiff to incorporate into the minds of the jury that the case had been a framed-up case by defense attorneys."

The next incident upon which appellant relies occurred also during the examination of Captain Yoris, who was testifying from memory concerning the statement by appellant concerning the shooting and matters preliminary to that statement. During the cross-examination of the witness by appellant's counsel, the deputy prosecuting attorney objected, stating: "Counsel is deliberately trying to mislead the witness." Appellant's counsel then asked the witness: "Am I misleading you," to which the witness answered: "No, not a bit." Counsel for the prosecution then made further objection to the effect that appellant's counsel was endeavoring to circumvent a ruling of the court, and reiterated that an attempt was being made to mislead the witness. Appellant's counsel stated that he regarded such statements as misconduct, whereupon the court instructed the jury that statements of counsel should be disregarded, and that "we are not trying statements of counsel." In view of the instruction promptly given by the court, we find no prejudicial error in the incident just narrated.

Appellant next relies upon some questions propounded to appellant on cross-examination. It seems to be conceded that appellant had been living with a woman named Catherine Bonner, also known as Catherine Moore. Appellant was asked with whom he lived, to which question appellant's counsel objected, his objection having been overruled. Finally, appellant was asked whether or not Catherine Bonner was a prostitute. The court having overruled objection to this question, appellant answered, "I don't know." As to questions concerning the nature of a hotel and a lodging house alleged to have been conducted by Catherine Bonner, appellant answered, over objection by his counsel, that he did not know the character of the

establishments. In all of this we find no misconduct on the part of counsel for the state. Objections to some questions were sustained and to others over-ruled, but we find nothing approaching misconduct on the part of counsel.

Appellant contends that the prosecution made some reference to an occasion when appellant had had the deceased, Frank Ray, arrested by a policeman, who it appears was a man of color. We find nothing in the record which supports appellant's contention that any reference to this matter can be said to have been "inflammatory," or such as to excite any prejudice against appellant.

In arguing the case to the jury, it appears that counsel for the state referred to some notes—what they were or by whom made does not appear, but appellant's counsel objected to "reading anything from a record which is not in evidence in this case." The court, in ruling on appellant's objection, very properly stated that attorneys, in arguing a case to the jury, may refresh their recollection as to the testimony, and for this purpose could use their own notes or other data. While counsel should not be permitted to so use writings not in evidence as to give the same undue importance, it nowhere appears that anything which counsel for respondent did transgressed the rules permitting the use of notes or other data to refresh his recollection.

Appellant complains of other matters, but further discussion thereof would extend this opinion to unreasonable length. We find in them nothing which even approximates ground for granting a new trial. It must be remembered that appellant's trial lasted almost three weeks. It was vigorously prosecuted and strenuously defended. In arguing the case to the jury, both counsel touched upon matters which were prob-

ably irrelevant to the issue to be determined, but we find in the record of the argument nothing of which appellant can reasonably complain.

We conclude that appellant had in all respects a fair trial, and we find nothing which entitles him to a reversal of the judgment entered by the court upon the verdict of the jury. The judgment is accordingly affirmed.

MILLARD, C. J., MAIN, TOLMAN, and GERAGHTY, JJ., concur.

