[No. 34581. Department Two. November 28, 1958.]

NICK PLACANICA, *Respondent*, v. RIACH OLDSMOBILE COMPANY, INC., *Appellant*.[1]

[1]Reported in 332 P. (2d) 47.

*Lycette, Diamond & Sylvester* and *Earle W. Zinn,* for appellant.

*Howard J. Thompson* and *Orvin H. Messegee,* for respondent.

HUNTER, J.—This is an appeal from a judgment entered in favor of the plaintiff in an action brought by him against the defendant Riach Oldsmobile Company, Inc., for personal injuries alleged to have been sustained by him as the result of a fall in the service department of the defendant corporation.

For many years the defendant operated an Oldsmobile dealership in the city of Seattle and, as an adjunct thereto, maintains service and repair facilities. Customers desiring to have their cars serviced drive into the building and, after their orders are taken by the salesmen, a "car jockey" moves the car to whatever portion of the building in which the work required is to be performed. Waiting room facilities are provided in the main showroom which is reached by a door leading from the service department.

March 11, 1955, between ten and eleven o'clock in the morning, the plaintiff drove into the defendant's service department to have his car lubricated and the oil changed. He did not get out of his car immediately, but waited for about ten minutes before an attendant came to wait upon him. While walking from his car to the waiting room he slipped and fell. Thereafter, he instituted this action to recover for the injuries he received as a result of the fall, alleging that the defendant had negligently allowed snow and ice and an oily substance to accumulate on the floor for a period of time preceding the accident, thereby proximately causing the plaintiff to slip and fall; that the defendant, as a reasonable prudent person, should have known of the dangerous condition, and in the exercise of ordinary care should have removed this condition, thereby making the premises safe for the invitee plaintiff.

Defendant denied all of plaintiff's allegations, except that the plaintiff was in the shop; that he fell and was injured. By way of affirmative defense, the defendant pleaded contributory negligence.

The case was tried to a jury. In answer to three special

interrogatories, the jury found (1) the defendant was negligent; (2) that its negligence was the proximate cause of plaintiff's injuries; (3) that the plaintiff was not guilty of contributory negligence. A verdict in the amount of fifteen thousand dollars was returned in favor of the plaintiff. The trial court denied defendant's motion for judgment notwithstanding verdict of the jury or, in the alternative, for a new trial and entered judgment in accordance with the verdict of the jury. This appeal by the defendant followed.

Appellant first contends that it was entitled to judgment in its favor, as a matter of law, and that the trial court erred in failing to sustain appellant's challenge to the sufficiency of the evidence after both parties had rested their cases.

■ In passing upon this assignment, this court must apply the rule: The verdict of the jury must stand unless it can be said, as a matter of law, that there is neither evidence nor reasonable inference therefrom to sustain it. *DeYoung v. Campbell*, 51 Wn. (2d) 11, 315 P. (2d) 629 (1957); *Wines v. Engineers Limited Pipeline Co.*, 51 Wn. (2d) 487, 319 P. (2d) 563 (1957).

■ It is a well-established rule of law, recognized in this jurisdiction, that where the negligence of the operator of a business is predicated on his failure to keep his premises in a reasonably safe condition for an invitee, it must be shown (1) that he had superior knowledge concerning the dangerous condition of the premises to persons going thereon; (2) that the condition has either been brought to his attention, or has existed for such time as would have afforded him sufficient opportunity, in the exercise of reasonable care, to have been cognizant of and to have removed the danger. *Falconer v. Safeway Stores*, 49 Wn. (2d) 478, 303 P. (2d) 294 (1956); *Mathes v. H. S. Kress Co.*, 38 Wn. (2d) 845, 232 P. (2d) 921 (1951); *Caron v. Grays Harbor County*, 18 Wn. (2d) 397, 139 P. (2d) 626, 148 A. L. R. 626 (1943); *Kalinowski v. Y. W. C. A.*, 17 Wn. (2d) 380, 135 P. (2d) 852 (1943).

The respondent admitted in the trial court that he saw the snow and ice on the floor, but argued that he was unaware of the oily substance underneath the snow and ice;

that this condition caused him to fall. In this respect, he contended that the appellant knew, or should have known, of this dangerous condition since the condition existed for a sufficient length of time for the appellant, if it had exercised the reasonable care of a prudent person, to have been apprised of the danger and to have either removed the condition, or to have warned the respondent of its existence.

The case was submitted to the jury under this theory. Instruction No. 12, to which no exception was taken, reads as follows:

"You are instructed that in order for the plaintiff to recover in this case, he must prove from a fair preponderance of the evidence not only the existence of an accumulation of oily substance, snow and ice on the floor of defendant's premises, as alleged in his complaint, and that he slipped and fell by reason thereof, but further, in addition he must prove by a fair preponderance of the evidence that the said alleged condition was either known to the defendant or had existed for such time as would have afforded the defendant sufficient opportunity, in the exercise of reasonable care, to have become cognizant of and to have removed the condition."

This instruction, no exception having been taken thereto, became the law of the case. *Trosper v. Heffner*, 51 Wn. (2d) 268, 317 P. (2d) 530 (1957); *Hatzenbuhler v. Harrison*, 49 Wn. (2d) 691, 306 P. (2d) 745 (1957).

The appellant does not contend the accumulation of oil was evident to or could be seen by the respondent; in fact, appellant insists that it was not there at all. The record discloses that the respondent testified that approximately an hour after his fall, he discovered a patch of oil about eight inches square on his overcoat in the area where his body struck the floor. The night preceding the accident, four to eight inches of snow had fallen and the snow and ice which had accumulated on the cars, as a result thereof, dropped on the floor of appellant premises when the cars were driven into the garage to be serviced. About sixty cars, on an average, were serviced each day by appellant. The garage opens at 7:30 a. m. for business and, on the day in question, cars had been coming into the garage to be serviced for

about three and one-half hours prior to when the respondent fell.

The appellant contends that the snow and ice were being removed by two car jockeys with a squeegee when they were not busy servicing or moving automobiles.

We quote the following excerpts of testimony from the record concerning the condition of the floor, the use of the garage, and the manner in which respondent fell.

On direct examination, respondent Placanica testified:

". . . Q. And will you describe to the jury first how you fell? A. Well, I was walking along, I noticed there was snow and kind of ice on the floor. Q. Did you see that on the floor? A. Yes. I did. . . . Q. Were you taking any, or were you not taking any special precautions because of the fact that you saw snow and ice on the floor? A. Yes, I was. Q. In what way? A. Well, I knew it was dangerous. I was pretty careful where I was walking, where I was going. Q. Now, in what manner did you fall? Not what caused it but how did you fall? A. I just fell, and my left leg went underneath me, in this position with my  . . ."

On cross-examination, respondent testified:

". . . Q. You mean the entire floor was covered with snow and ice? A. Some places there was more than others. Wherever the cars would be parked. Q. Well, take that pointer and just outline the areas where there was snow and ice. A. I would say all over the floor. All over in here. Q. All over? Your testimony was that was even and it wasn't in patches? A. It could have been in patches, yes. Q. Well, was the floor completely covered or not? A. Pardon? Q. Was the floor completely covered or not? Was the floor completely covered with snow and ice or not? A. At places, yes, sir. . . ."

Ace L. Garrard, a service adviser employed by appellant and present during the morning in question, testified on direct examination:

". . . Q. Was there any snow or water at that point? A. *It was wet and snowy, to a certain extent, over a lot of the area.* No great amount of it, because the car jockey was doing his best to keep it cleared away. . . ." (Italics ours.)

James C. Home, janitor for the appellant, testified on cross-examination:

". . . Q. *Isn't it true, also, that as cars park there in the service department, they do drip oil and greasy substances on the floor? A. Oh, yes. Q. And you have to clean that up, too?* A. Oh, no, I don't clean that up. The car jockey cleans that up. . . ." (Italics ours.)

Arthur G. Hornung, service adviser for the appellant, testified on direct examination:

". . . Q. I am asking you what was actually being done that morning, to your knowledge. A. *I couldn't say. I couldn't say that any of the snow had been removed. It is done all day long. During conditions like that. It is impossible to drive cars in, that have been in a snowstorm, without carrying snow in.* Q. Now, you had been open how long that day? What time do you open? A. The doors are open at 7:30. There is a young man comes in there about 7:30. I usually arrive about ten minutes to eight. . . ." (Italics ours.)

On cross-examination, he testified:

". . . Q. If any there was done, it was done by the car jockey? A. That is right. Q. But you do not have a very vivid recollection yourself of the car jockey actually pushing the squeegee, do you? A. Usually I am quite busy, but I would say by that time the car jockey should have probably gone over it twice. Q. Should have gone over it? A. Because it has been done previously under those conditions, there is a lot of snow and water. Q. So it is your testimony that by that time, between ten and eleven o'clock, the car jockey should have gone over it at least twice? A. Yes. . . ."

Placanica testified on redirect examination:

". . . Q. All right. Now, you heard me ask Mr. Geer yesterday whether or not he had told you that there had not been any clean-up and squeegeeing work done until after your injury. Did he so state to you? A. *Yes, in fact it is the truth, nobody was squeegeeing until after I fell. Q. Now, let me ask you this: Did he tell you that? A. Yes.* Q. When did he tell you that? A. Well, he told me, I go in there quite often. Q. Well, how long after the the accident? A. Well, Monday when I went in there to see somebody about my injury. Q. The Monday following the accident? A. That is right. I had to wait for my car. . . ." (Italics ours.)

■ Considering the testimony and the inferences to be drawn therefrom, in the light most favorable to the respondent, the jury could have concluded (1) that the oil patch on respondent's coat came from the place where he fell on appellant's premises; (2) that the accumulation of the oily substance occurred during the morning from the servicing of cars and had existed a sufficient length of time for the appellant to be charged with superior knowledge of the existence of this dangerous condition. Therefore, the trial court did not err when it denied appellant's motion for judgment n.o.v.

The trial judge aptly distinguished the present case from the facts of the *Kress* case, *supra*, wherein a woman slipped on some fluid from a broken bottle that had fallen off the counter stating:

". . . As stated in the Kress case, whatever the plaintiff slipped on there could have fallen there immediately before the accident without any opportunity of knowledge on the part of the defendant, Kress Company. *But in this case, we are dealing with a garage where everyone knows oil does drip and leak onto the floor from automobiles and since the doors of the establishment had opened in the early morning the defendant, through its officers and agents, knew of this snow and ice accumulating. . . .*" (Italics ours).

■ In support of his alternative motion for a new trial, the appellant urges that the trial court committed prejudicial error in permitting one Howard Webb to testify as an expert. Mr. Webb, an experienced floor finisher, was called to testify as to the propensities of the appellant's floor to be slippery when covered with an accumulation of oily substance, ice and snow. Over objection, he testified in the affirmative. The appellant objected, first, on the grounds that this was a conclusion any ordinary person could draw and was not a matter within the peculiar knowledge of an expert.

Some floors, by their very nature, have the propensity to be more slippery under certain conditions than others. The expert floor finisher, by his experience, was in a better position than the average man to know the propensities of floors of different compositions and finishes to be slippery under certain conditions. This was a factor to be considered

by the jury in determining whether the use of this particular floor was dangerous under the conditions disclosed by the evidence.

The trial judge, by instruction No. 20, adequately instructed the jury as to its manner of considering expert opinion evidence, in that it was not bound by such opinion and that it was to be given just such weight as it deemed it was entitled. The jury was entitled to the benefit of this testimony to be considered under the instructions given. The trial court did not err by its admission.

■ The appellant further contends, however, that the admission of the expert's testimony was a material variance in the pleadings in that the condition of the surface of the floor was not pleaded, and it was denied an opportunity to prepare a defense on this issue. We do not so find. The complaint alleged:

". . . that the said oily substance, snow and ice rendered *said floor* dangerous for use as a passageway for the customers of the defendant. . . ." (Italics ours.)

The particular floor was in issue, and it was proper to describe the floor so that the jury would know what the accumulation of the oily substance, snow and ice was superimposed upon. The respondent is entitled to show all surrounding circumstances that made its use dangerous under those conditions, coming within the purview of the issues raised in the pleadings. See *West v. Airth*, 12 Wn. (2d) 77, 120 P. (2d) 536 (1941), and cases cited therein.

■ The appellant finally contends the damages awarded by the jury were excessive, and the trial court should have reduced the amount of the award or granted a new trial. It appears that the respondent proved special damages in the amount of $575.70, as the result of two operations on his knee; that he was unable to stand on his leg more than an hour at a time, necessitating the use of a cane; that there would be some permanent disability; that he was unable to carry on his tavern business, necessitating the sale of the same, and that his wife was required to go to work to provide them with a livelihood. Instruction No. 21 is a correct statement of the law in respect to damages to be allowed and no

exception was taken thereto. Examination of the record does not disclose the verdict was so excessive as to amount to passion or prejudice. See *Thomas v. Casey*, 49 Wn. (2d) 14, 297 P. (2d) 614 (1956).

In view of our disposition of this case, it is unnecessary to consider appellant's other assignments of error. The judgment of the trial court is affirmed.

HILL, C. J., DONWORTH, ROSELLINI, and FOSTER, JJ., concur.

