[No. 220-40543-1.    Division One.    May 25, 1970.]
Panel 2

THE STATE OF WASHINGTON, *Respondent,* v. EAMOND SMITH, *Appellant.*

*William J. Gaffney,* for appellant (appointed counsel for appeal).

*Charles O. Carroll, Prosecuting Attorney,* and *Patricia Harber, Assistant,* for respondent.

WILLIAMS, J.—Appellant was charged, tried by jury, and convicted of second-degree murder.

On April 4, 1968, in a tavern in Seattle, the decedent and appellant quarreled. At the time he was shot by appellant, the decedent had his hands in his trouser pockets. There was disputed evidence as to which party was advancing and which retreating when appellant pointed a gun at decedent and fired three times in rapid succession. There was some evidence of an altercation between the decedent and appellant, but it appears that there was no violence prior to the shooting.

Appellant claimed self-defense. Homicide is excused if there is "reasonable ground to apprehend a design on the part of the person slain . . . to do some great personal injury to the slayer . . . and there is imminent danger of such design being accomplished; . . ." RCW 9.48.170. Appellant's counsel offered to prove that the racial group to which the decedent belonged was sufficiently violent to cause one who argued with any member of that race to have "reasonable ground to apprehend" imminent danger of receiving great personal injury from a knife, gun, bar stool, or anything else in reach. The objection of the state to such testimony was sustained.

▪ Appellant submitted no authorities or references in support of his contention, and we know of none. To the contrary, the law is established that in considering a person's conduct, membership in one race or another is immaterial. *Atlanta Coca-Cola Bottling Co. v. Shipp,* 170 Ga. 817, 154 S.E. 243, 71 A.L.R. 1295 (1930). In *State v. Turpin,* 158 Wash. 103, 290 P. 824 (1930), the same general type of

defense was raised by the defendant who was charged with killing an oriental. He claimed he was afraid of Chinamen. The Supreme Court rejected the defense by ignoring it.

Of course, a characteristic or trait of an individual assailant such as a disposition for turbulence or violence may be shown as one of the circumstances bearing upon the justification for the defender's actions in protecting himself. *State v. Adamo,* 120 Wash. 268, 207 P. 7 (1922); *State v. Moore,* 182 Wash. 111, 45 P.2d 605 (1935); 6 Am. Jur. 2d *Assault and Battery,* § 105. Self-defense is personal to the defender, who is concerned only with the person or persons then offering to do him great personal injury. The reputation of a particular group for lawlessness may be taken into account, if the purported assailant is a member of that group and this fact is known to the defender. These circumstances should be considered by the jury in deciding the issue of what the defender as "a reasonably prudent man similarly situated would have done. . . ." *State v. Tribett,* 74 Wash. 125, 132 P. 875 (1913). Appellant did not offer to prove that the deceased was a member of a group which he knew was violent, or turbulent, or predisposed to fight with certain weapons. His offer was to prove that the deceased was a member of a race. This is not relevant to a determination of the reasonableness of the appellant's apprehension of danger just prior to his firing the weapon.

Appellant also contends there was error during his cross-examination as to previous convictions. He was asked and answered:

Q Have you ever been convicted of a crime, Mr. Smith? A A crime? What crime? Q Well, any kind? A Not that I know of any kind of a crime. I have had thirty days suspended. Q For what? Was that for a threat to kill? A Yes. Q When was this? A This past year. March. Q March of this year? A March of '68. Q This was unrelated to this case? A Yes, it was. Q Did that take place in the Rendevous Tavern? A Yes, it was. Q Did you have a gun on your at that time?

Objection to the last question was sustained. Subsequently, both counsel discovered that appellant's testimony

as to the prior conviction was in error. At the request of appellant and with consent of the state, the criminal complaint and transcript of the prior offense were entered in evidence. The complaint in Seattle Municipal Court charged that appellant "threatened to do bodily injury" and the transcript reflected that he was accused of "threats," and required to serve 30 days, suspended. Since the jury was given the correct information as to the previous conviction, there was no prejudice to the substantial rights of appellant. *State v. Robbins,* 37 Wn.2d 492, 224 P.2d 1076 (1950); *State v. Overland,* 68 Wash. 566, 123 P. 1011 (1912).

■ A further claim of error by appellant is that twice the prosecutor improperly got before the jury testimony that appellant had taken a pistol into another tavern on a separate occasion. The question of whether or not appellant carried a gun was initially raised by appellant during the direct examination of one of his witnesses. Also, in his own defense, appellant stated that he habitually kept his pistol in a bureau drawer at home. Appellant created the issue and may not complain of efforts by the state to rebut the evidence he introduced. *State v. West,* 70 Wn.2d 751, 424 P.2d 1014 (1967).

The judgment is affirmed.

UTTER, J., concurs.

HOROWITZ, A. C. J. (concurring)—I concur in the affirmance of the judgment below but believe that the question raised by the rejection of the offer of proof concerning "how fights between negroes are usually settled" warrants further consideration.

> RCW 9.48.170 provides that homicide is justifiable
>
> when there is reasonable ground to apprehend a design on the part of the person slain to commit a felony or to do some great personal injury to the slayer . . . and there is imminent danger of such design being accomplished; . . .

In order for self-defense to be available as a defense, not

only must the defendant honestly apprehend a design on the part of the person slain to do the defendant some great personal injury, but he must have reasonable ground for his belief. *State v. Tyree*, 143 Wash. 313, 255 P. 382 (1927); *State v. Rader*, 118 Wash. 198, 203 P. 68 (1922); *State v. Tribett*, 74 Wash. 125, 132 P. 875 (1913); *State v. Bowinkelman*, 66 Wash. 396, 119 P. 824 (1911); *State v. Stockhammer*, 34 Wash. 262, 75 P. 810 (1904). In defendant's effort to provide relevant and material evidence on the issue of self-defense, the defendant was asked: "Do you have an opinion based on personal experience and observation as to how fights between negroes are usually settled?" The court sustained the state's objection to the question. The defendant then offered to prove

> by the testimony of the defendant that when there is a quarrel between negroes which comes to violence, almost invariably recourse is made to knives, guns, bar stools, or whatever is within reach. It is unusual for them to engage each other bare handed. It is a fact that any prudent person encountering a negro should take into account . . . The defendant had knowledge of that in addition to his knowledge of this particular individual.

The court in sustaining the objection stated:

> I just cannot believe that black people ever should be stereotyped, nor do I believe that what you say is true. I think that this is a slander on all good black people in our society, whether that is said to be usual or not.
>     . . . The sole question is whether or not this defendant himself had reason to believe that he was in eminent [*sic*] danger of serious bodily harm . . . The jury is going to have to decide, not based upon some sort of statement the entire black community has this kind of reputation.

The trial court's action in holding the question objectionable and in sustaining the state's objection to the offer of proof is the issue raised.

Defendant's offer was to testify to a racial trait or propensity of an entire race of human beings for a particular kind of conduct. There is a distinction between a propens-

ity of an inanimate, insensate material, (*e.g., Placanica v. Riach Oldsmobile Co.,* 53 Wn.2d 171, 332 P.2d 47 (1958) propensity of a floor to be slippery when covered by oil or other substance) and a trait or propensity of a particular race of sentient human beings for the performance of a particular conduct. The former, unlike the latter, is not possessed of a nervous system adapting itself to changing circumstances. The former, unlike the latter, involves a propensity generally fixed, predictable and not subject to change by learning or adaption to the environment. The traits or propensities of human beings may be instinctive or learned. Even if instinctive, their expression may be controlled by learning or environment. Indeed, law itself proceeds upon the assumption that an individual has the capacity to control his conduct whether the conduct be instinctive or learned and that law is the instrumentality by which such conduct may be so controlled. Accordingly, the acquisition of a trait or habit of conduct may be acquired or changed by reason of many factors, including age, sex, intelligence, education, economic or social condition, upbringing, religion, social pressures, norms of conduct acceptable in the community, poverty, affluence, fear, physical condition, and learned behavior as a result of imitation, study and observation. Because the learning process differs as among individuals of a given race, the effects or results of that learning as to individual members of that race likewise differ. Necessarily implicit in the general offer of proof here made is the erroneous assumption that all Negroes have gone through the same learning process in substantially the same environment, reacting in the same way, and that, therefore, all Negroes have acquired the same trait or propensity for the particular conduct described in the offer of proof. Even in such published studies as have come to our attention concerning the weapon-carrying habits of Negroes in given areas (none have been made in Seattle), no claim has been made in such studies that the propensity for weapon carrying is inborn in Negroes any more than it is inborn in white people and no study has

come to our attention purporting to show that all Negroes have by learning acquired a weapon-carrying trait or habit of use in fights between Negroes. Schultz, *Why the Negro Carries Weapons,* 53 J. Crim. L. C. & P. S. 476 (1962); M. Wolfgang, Patterns in Criminal Homicide, p. 84 (in Philadelphia 1948 to 1952) (1958); D. Pittman & W. Handy, *Patterns in Criminal Aggravated Assault,* 53 J. Crim. L. C. & P. S. 462 (in St. Louis 1961) (1964).

We, therefore, take judicial notice of the fact that the offer on its face was clearly erroneous and if received would have been of no probative value. Capacity for conduct and habitual resort to such conduct are two different things. A court may properly take judicial notice that certain claimed facts are not so; *e.g., Kroger v. Cumberland Fruit Package Co.,* 145 Wis. 433, 130 N.W. 513, 517 (1911). Accordingly, the court may properly refuse to admit evidence known by operation of the doctrine of judicial notice to be erroneous on its face and, therefore, having no probative value. See *State v. Cushing,* 17 Wash. 544, 557, 50 P. 512 (1897) (homicide prosecution in a jury case). A court is not required to admit testimony known to be untrue; or if admitted to treat such testimony as sufficient evidence of a fact in issue. Nor is a court required to admit or treat as sufficient, testimony which amounts merely to inadmissible conclusions or speculation. *Oberlander v. Cox,* 75 Wn.2d 189, 449 P.2d 388 (1969); *Coffman v. McFadden,* 68 Wn.2d 954, 416 P.2d 99 (1966); Annot., 45 A.L.R.2d 1169 (1966); *cf., Kroger v. Cumberland Fruit Package Co., supra.* See C. McCormick, Evidence, § 330 (1954). Evidence that cannot be true is not substantial evidence. See *United States v. Perry,* 55 F.2d 819, 822 (8th Cir. 1932); *Chicago, M., St. P. & P. R.R. v. Linehan,* 66 F.2d 373, 380 (8th Cir. 1933); *Davidson v. Missouri Orpheum Corp.,* 236 Mo. App. 1025, 161 S.W.2d 707, 709 (1942).

Under the circumstances, the evidence offered here cannot furnish "reasonable ground to apprehend a design on the part of the person slain . . . to do some great personal injury to the slayer . . ." RCW 9.48.170. De-

fendant's belief in the truth of the evidence offered is not enough. The belief must be based on reasonable grounds lacking here.

The question presented is not entirely new. In *State v. Lem Woon,* 57 Ore. 482, 107 P. 974, 978, 112 P. 427 (1910), a murder case, the court said:

> The defendant attempted to show the revengeful disposition of the Chinese people as a race, to the effect that "when a trouble breaks out between two classes, or factions of the same class, and one man is injured, he does not care particularly whether he gets the assailant or the person who particularly injured him, but is satisfied if he brings injury upon one or the other side or class or faction," . . . The evidence offered relates to Chinese customs or characteristics, and applies to the race, and not to the individual. But a rule that would admit evidence of such characteristics or customs of a class or a race to affect the credibility of an individual witness of that class or race cannot apply to the Chinese more than to the Negro, Indian, or any other people who practice them. . . . To admit such evidence would be a dangerous precedent. Testimony should be received only under legal principles and rules of evidence. . . .
>
> . . .
>
> . . . But it certainly would be incompetent to show the reputation or trait of character of a class or race of people as to matters that might discredit the race for the purpose of discrediting the testimony of an individual of that race. Each witness should stand or fall by his own character, motives, or customs, and not that of his race.

See also *Bushardt v. United Inv. Co.,* 121 S. C. 324, 113 S.E. 637, 35 A.L.R. 637 (1922); *Fonville v. State,* 91 Ala. 39, 8 So. 688, 689 (1891); *Atlanta Coca-Cola Bottling Co. v. Shipp,* 170 Ga. 817, 154 S.E. 243, 71 A.L.R. 1295 (1930).

The offer was properly rejected also because there was no showing that the defendant whose testimony was offered, was an expert qualified to render an opinion of the kind proposed. To have qualified it would have been necessary for the defendant to show that he had the necessary skill, experience or knowledge beyond that possessed by the ordinary person, as, for example, that possessed by an

anthropologist or psychologist in fields of study concerned with racial or ethnological traits of conduct. See *Knight v. Borgan,* 52 Wn.2d 219, 324 P.2d 797 (1958). Here there was no showing as to the extent of defendant's observation or experience or as to any study he may have made that qualified him to express the opinion proposed. Had the court sustained an objection to the defendant's testimony on the ground that he had not shown expert qualifications, we would have upheld the trial court's action on that ground as well. See *Crowe v. Prinzing,* 77 W.D.2d 909, 468 P.2d 450 (1970); *Hill v. C & E Constr. Co.,* Inc., 59 Wn.2d 743, 370 P.2d 255 (1962). It is true that the court did not sustain the objection to the testimony on that ground. We are not confined, however, to the ground assigned for the purpose of affirming the judgment. *Retail Clerks Local 629 v. Christiansen,* 67 Wn.2d 29, 406 P.2d 327 (1965); *cf., May v. Wright,* 62 Wn.2d 69, 381 P.2d 601 (1963).

Although the trial court excluded evidence that mere membership in the Negro race automatically imputed to the decedent the habit of recourse to "knives, guns, bar stools or whatever is within reach," the court did not exclude any evidence that the decedent himself—independently of his race—might resort to the conduct claimed. There was evidence concerning the age and physique of the decedent as observed by the defendant. There was evidence that the decedent had a reputation for being quarrelsome and the defendant testified that he believed that the decedent was not a man to be trusted. He mentioned two prior instances when the decedent carried a weapon—on one occasion a switchblade about 14 months before and a gun on another occasion. The defendant also testified that when the decedent approached him he had his hands in his pockets and the defendant was fearful that the decedent might have had a gun in his pocket to be used against the defendant. All such evidence was properly admitted in conformity with the rule that self-defense is personal to the defendant with respect to the particular person defended against. The jury chose to reject the claim of self-defense, possibly being

helped to. that conclusion by the defendant's testimony that the defendant now felt. it was not necessary for him to shoot the decedent to protect himself.

I concur in the affirmance of the judgment below.

UTTER, J., concurs with HOROWITZ, A. C. J.

Petition for rehearing denied July 6, 1970.