[No. 11522-7-I.   Division One.   September 10, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. ROSS HARVEY DESPENZA, *Appellant.*

*Ross Harvey Despenza,* pro se, and *Mark Mestel,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *George Bianchi, Deputy,* for respondent.

CORBETT, A.C.J.—Ross Harvey Despenza appeals his judgment and sentence for second degree assault. We reverse and remand for a new trial.

The victim of a shooting told police that the defendant was the assailant. Defendant was arrested about 2 hours

after the incident. He was given *Miranda*[1] warnings at the time of arrest and again at the police station. He indicated that an attorney would have to be appointed for him, but he did not wish to have one present at that time. When asked if he wanted to talk about the reason for his arrest, he told the detective he would like to think about it for a while. The detective left and about 15 minutes later another detective asked if he was willing to discuss the incident. Defendant responded that he still did not know because his answers were sometimes misconstrued. The detective then asked if he could pose direct questions so that the defendant could decide if he wanted to answer each question as asked. Defendant proceeded to answer approximately six direct questions before stating he did not want to answer anything further. Defendant moved in limine to prevent reference to his postarrest silence. The trial court ruled that the State could not make references to postarrest silence in opening statement or during the State's case in chief, but could cross–examine the defendant concerning his response to the six questions that were answered during interrogation. Defendant assigns error to this ruling.

Calling attention to a defendant's exercise of the right to remain silent and suggesting thereby that an unfavorable inference may be drawn violates due process. *Doyle v. Ohio*, 426 U.S. 610, 617, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976). The principle applies with equal force to cross examination, the State's case in chief, and argument. *State v. Fricks*, 91 Wn.2d 391, 396, 588 P.2d 1328 (1979). In this case, there was a limited waiver of the right to remain silent. The court's ruling that the defendant's answers to the six questions were voluntarily given is supported by substantial evidence. Cross examination and argument based on the answers to those questions were permissible. *State v. Young*, 89 Wn.2d 613, 621, 574 P.2d 1171, *cert.*

---

[1]*Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

*denied,* 439 U.S. 870 (1978). The trial court did not err in its ruling. Note, however, that in the context of these facts we do not say that the defendant was "toying" with the police by a selective waiver of his Fifth Amendment rights. *Cf. State v. Bradfield,* 29 Wn. App. 679, 685, 630 P.2d 494 (1981) (where defendant toyed with police by telling only facts he wanted them to hear, he cannot rely upon *Miranda* and his "nonstatements" were properly admitted). It would be error to permit the State to go beyond direct inferences from the defendant's responses to the officer's questions.

Defendant also assigns error to failure to give his proposed instruction to the effect that he was not obligated to say anything to the police. The instructions are not set out in the brief, and he presents no authority in support of the assignment. We therefore do not consider the issue. *State v. Conklin,* 79 Wn.2d 805, 806–07, 489 P.2d 1130 (1971).

The State moved in limine to exclude the testimony of a neuropsychologist. As an offer of proof, the defendant represented that several days prior to the shooting the victim had undergone neuropsychological evaluation, resulting in a report that the victim exhibited paranoid tendencies, was unusually defensive and had a propensity to lie. The evaluation was offered to assist the jury in assessing the victim's credibility. Defendant assigns error to the court's refusal to admit this testimony.

■ Where the mental disability of a witness is clearly apparent and his competency is a central issue in the case, appropriate expert testimony is admissible to define the mental condition or its consequences. *State v. Froehlich,* 96 Wn.2d 301, 305–06, 635 P.2d 127 (1981). The trial court in its discretion must decide whether the expert testimony will cast more light than shadow on the effect of the mental disorder upon credibility. *State v. Stamm,* 16 Wn. App. 603, 605, 559 P.2d 1 (1976). The predicate of such testimony is the existence of a mental disorder. Once this is established, the expert may testify to the consequences of this disorder upon credibility. *State v. Froehlich, supra* at 306. The expert in this case found no evidence of biological

mental dysfunction and reached no conclusion regarding the existence of a psychiatric condition. Based primarily upon the results of the Minnesota Multiphasic Personality Inventory (MMPI), he concluded that the victim exhibited the tendency to sometimes lie. It was not an abuse of discretion to refuse the testimony under ER 403. *See State v. Jones,* 99 Wn.2d 735, 748, 644 P.2d 1216 (1983).

The State moved in limine to preclude evidence of the victim's membership in the Ku Klux Klan and association with the American Nazi Party. Defendant offered this evidence to establish the victim's reputation for violence and the defendant's state of mind at the time of the shooting. Defendant was permitted to testify that he was aware that the victim belonged to an "extreme political organization," always carried a gun, and had been involved in prior shootings. Defendant only assigns error to the court's refusal to permit reference to the Nazi Party by name.

The justification of self–defense must be evaluated from the defendant's point of view. The legitimacy of his conduct must be evaluated in light of all the facts and circumstances known to him at the time of the shooting. *State v. Allery,* 101 Wn.2d 591, 594, 682 P.2d 312 (1984). The reputation of a particular group for lawlessness may be taken into account if the defendant knew the victim was a member of that group. *State v. Smith,* 2 Wn. App. 769, 771, 470 P.2d 214 (1970). The trial judge sought to avoid unfair prejudice by reference to the infamous Nazi Party. This was a proper exercise of the court's discretion under ER 403.

This was the second trial. The first trial ended in a mistrial because the jury was unable to agree upon a verdict. Defendant contends that there was no showing of a manifest necessity for the mistrial and that the second trial therefore placed him in double jeopardy. The first jury had been instructed concerning first degree assault and the lesser included offense of second degree assault. When the first trial judge discharged the jury, he accepted the foreman's statement that they could not agree. The court did

not specifically determine whether the jury had considered the lesser included offense. Defendant argues that if the jury was considering separate counts, the court could have inquired whether agreement could be reached on any count, *see* WPIC 155.00, and that the court should have made the same determination as to lesser included offenses. *See State v. Castrillo,* 90 N.M. 608, 566 P.2d 1146, 1149 (1977).

■ Defendant bases his argument upon an alleged ambiguity in verdict form B when used in connection with WPIC 155.00.

> We, the jury, find the defendant Ross Harvey Despenza, not guilty of the crime of assault in the first degree as charged and find the defendant _____ of the lesser included crime
> ("not guilty" or "guilty")
> of assault in the second degree.

Verdict form B.

> You must fill in the blank provided in verdict form A the words "not guilty" or the word "guilty", according to the decision you reach.
> If you find the defendant guilty on verdict form A, do not use verdict form B. If you find the defendant not guilty on verdict form A, fill in the blank provided in verdict form B the words "not guilty" or the word "guilty" according to the decision you reach.
> If you find the defendant guilty of the crime of assault but have a reasonable doubt as to which of two or more degrees of that crime the defendant is guilty, it is your duty to find the defendant not guilty on verdict form A and to find the defendant guilty of the lower degree on verdict form B.

Instruction 17, in part. The jury was also given the following instruction, which embodied the language of RCW 9A.04.100(2):

> If you are not satisfied beyond a reasonable doubt that the defendant is guilty of the crime charged, the defendant may be found guilty of any lesser crime, the commission of which is necessarily included in the crime charged, if the evidence is sufficient to establish the defendant's guilt of such lesser crime beyond a reasonable doubt.

> The crime of assault in the first degree necessarily includes the lesser crime of assault in the second degree.
>
> When a crime has been proven against a person and there exists a reasonable doubt as to which of two or more degrees that person is guilty, he or she shall be convicted only of the lowest degree.

Instruction 12. Verdict form B is "susceptible to the interpretation that the jury must agree on a verdict of not guilty of first degree assault before considering second degree assault." *State v. Watkins,* 99 Wn.2d 166, 178, 660 P.2d 1117 (1983). Instruction 12 clarified any ambiguity in verdict form B. *State v. Krup,* 36 Wn. App. 454, 463, 676 P.2d 507, *review denied,* 101 Wn.2d 1008 (1984). Read as a whole, the instructions properly informed the jury of the applicable law. *State v. Krup, supra* at 463. It was not error to give them.

The remaining question is whether the trial court abused its discretion in declaring a mistrial. The constitutional prohibition against double jeopardy protects a defendant's "valued right" to have his trial completed by a particular tribunal. *Arizona v. Washington,* 434 U.S. 497, 503 n.11, 54 L. Ed. 2d 717, 98 S. Ct. 824 (1978). A judge's decision to discharge must be based on the presence of extraordinary and striking circumstances which indicate that substantial justice cannot be obtained without declaring a mistrial. This decision is subject to great deference. *State v. Jones,* 97 Wn.2d 159, 163, 641 P.2d 708 (1982). The trial court must be careful to not suggest to the jury the need for agreement, the consequences of no agreement, or the length of time a jury will be required to deliberate. CrR 6.15(f)(2). The purpose of this rule is to prevent judicial interference in the deliberative process. *State v. Boogaard,* 90 Wn.2d 733, 736, 585 P.2d 789 (1978).

The first trial lasted approximately 11 days. After approximately 3½ days of deliberation by the jury, the trial judge suggested that he inquire of the foreman concerning the reasonable probability of reaching agreement. Trial counsel objected to the court doing *anything* other than

reading WPIC 4.70 without the "reasonable time" language. Upon the court's inquiry, the foreman stated that there was no possibility of the jury reaching an agreement. Because the foreman was looking around at the other jurors, the judge sent the jury back to discuss this question. The jury returned and the foreman again stated that all jurors believed there was no reasonable probability of their reaching an agreement. The trial judge then declared a deadlock and discharged the jury. Trial counsel did not request that the jury be asked whether there was a reasonable probability of reaching an agreement on either the greater or lesser offense and at no time did he object to the declaration of a mistrial or retrial. The issue is raised for the first time on appeal. *Cf. State v. Pugliese,* 120 N.H. 728, 422 A.2d 1319, 1320 (1980) (defendant objected to declaration of a mistrial unless the court inquired whether the jury had acquitted on the greater offense); *Stone v. Superior Court,* 31 Cal. 3d 503, 646 P.2d 809, 183 Cal. Rptr. 647, 650 (1982) (prosecutor and defense attorney stipulated that the court should inquire as to how the jurors stood before declaring a mistrial).

We cannot imply from the failure to reach a verdict that the jury acquitted the defendant of the greater offense. *Walters v. State,* 255 Ark. 904, 503 S.W.2d 895, 897 (1974). *People v. Griffin,* 66 Cal. 2d 459, 426 P.2d 507, 510, 58 Cal. Rptr. 107 (1967). Nor can we say without speculation that the court could have made an inquiry that would disclose the status of deliberation and not violate the intent of CrR 6.15(f)(2). We emphasize that any such inquiry would have been contrary to the defendant's wishes. The jury's acknowledgment that it was deadlocked, coupled with the lapse of time, constituted extraordinary circumstances justifying the discharge. *State v. Jones,* 97 Wn.2d at 164; *State v. Dykstra,* 33 Wn. App. 648, 651, 656 P.2d 1137 (1983). The court properly exercised its discretion in discharging the jury.

Defendant claimed that he acted in self–defense when he shot the victim. He proposed an elements instruction which

placed the burden upon the State to prove that the defendant's acts were neither justifiable nor excusable. He assigns error to the court's failure to give his instruction and to the court's instruction which did not place the burden upon the State to prove the absence of self–defense. The court also gave the statutory definition of justification without allocating the burden of proof.

█ The instructions taken as a whole must make it clear that the State has the burden of proving the absence of self–defense. *State v. Acosta,* 101 Wn.2d 612, 621, 683 P.2d 1069 (1984). Defense counsel is only required to argue that the facts fit the law. The law must be clearly stated so that it is not necessary to argue what the law is to the jury. *State v. Acosta, supra* at 622. The instructions, read as a whole, did not clearly impose upon the State the burden to prove beyond a reasonable doubt the absence of self–defense. This was error. The defendant is entitled to a new trial.

Defendant filed two lengthy pro se briefs. Because of the style in which they are written, they are difficult to understand. After careful reading and consideration, we glean the following issues:

1. Trial records of the second trial were prejudicially and erroneously removed from the state. Apparently the court reporter took the transcript to Arizona, and there was some delay in transcription due to his eye surgery. Defendant's attorney was given additional time to review the transcript once provided and to then file the appellant's brief. Defendant identifies no prejudice which resulted from removal of the transcript from this state.

2. The information was defective because it did not include the lesser included offense. Defendant was not informed of the charge he was to meet. The information charged the defendant with first degree assault. Second degree assault is a lesser included offense which need not be adverted to in the information. *State v. Foster,* 91 Wn.2d 466, 471–72, 589 P.2d 789 (1979).

3. Defendant was placed in double jeopardy because he

was twice acquitted of first degree assault and twice acquitted of second degree assault. The first trial resulted in mistrial, not acquittal. A hung jury is not the equivalent of an acquittal for purposes of double jeopardy. *State v. Russell,* 101 Wn.2d 349, 351, 678 P.2d 332 (1984). The claim of double jeopardy is otherwise dealt with in the opinion.

4. The mistrial statutes are vague and overbroad. Defendant's argument on this point is so unclear that we are unable to address it as error. On its face, it does not appear meritorious. An assignment of error without citation of authority will not be considered unless it appears meritorious on its face. *State v. Kroll,* 87 Wn.2d 829, 838, 558 P.2d 173 (1976).

5. The trial judge was without legitimate basis to declare a mistrial because there was no manifest necessity. The trial judge declared a mistrial because he knew the jury was voting to acquit. We have earlier addressed the issue of manifest necessity. There is no evidence in the record to support the assertion regarding the trial judge.

6. The evidence was insufficient. The State failed to prove intent. Defendant was convicted of second degree assault. There was sufficient evidence to support the verdict. *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980).

7. It was improper to allow an instruction on the lesser included offense. Neither the State's nor the defendant's theory involved second degree assault. Defendant was either guilty of first degree assault or innocent. The court may instruct on a lesser included offense if each of the elements of the lesser offense is a necessary element of the offense charged and the evidence supports an inference that the lesser offense was committed. *See State v. Workman,* 90 Wn.2d 443, 448, 584 P.2d 382 (1978).

8. Both trial judges should have disqualified themselves because of their inability to be impartial. Defendant cites

no basis for this argument or any examples indicating bias or partiality. There is no evidence in the record to support this bare assertion.

9. Defendant's presentation of his case was unfairly limited by the trial judge not allowing statements about race and not allowing the defendant to testify as to what occurred during 7 minutes of the 10–minute incident. The State's evidence only covered about 3 minutes of the total time. At the defense attorney's request, the trial judge prohibited the prosecutor from referring to a portion of a postarrest statement that contained a general racial slur. Defendant cites no other examples or if he does they are not clear. His argument about his testimony is too vague to permit appropriate analysis and response.

10. The trial judge did not give proper self–defense instructions. This issue was raised by defense counsel in appellant's brief and is addressed earlier in the opinion.

11. Trial records from the second trial were altered prejudicially deleting the defendant's objection to introduction of the lesser included offense.

12. The father of the victim involved himself in the charging, retrying, and sentencing. He also prevented officers from taking a statement from the victim for several days.

13. Evidence was destroyed and fabricated.

14. At least two instances of jury tampering and misconduct occurred. The victim's brother contacted and influenced a member of the first jury. The foreman conducted a poll during the first part of the State's closing argument and found the jury would not convict on first degree assault. She told the prosecutor this.

These are bare assertions unsupported by evidence in the record. Contentions which involve matters outside the record cannot be reviewed on direct appeal. *State v. King,* 24 Wn. App. 495, 498, 601 P.2d 982 (1979).

Reversed and remanded for a new trial.

WILLIAMS and SCHOLFIELD, JJ., concur.

Review denied by Supreme Court December 7, 1984.