118 P.3d 349 (2005)
In re the Matter of the Personal Restraint Petition Of Victor L. CANDELARIO, Petitioner.
No. 31048-1-II.
Court of Appeals of Washington, Division 2.
April 18, 2005.
Publication Ordered July 16, 2005.
*350 Richard Alan Linn, Linn-Barnes Law Office PLLC, Seattle, WA, for Petitioner.
Randall Avery Sutton, Kitsap Co. Prosecutor's Office, Port Orchard, WA, for Respondent.

ORDER GRANTING PETITION
¶ 1 Victor L. Candelario seeks relief from personal restraint imposed following his 1999 jury conviction of second degree felony murder based on the predicate offense of assault. He argues that his conviction must be vacated under In re Andress, 147 Wash.2d 602, 56 P.3d 981 (2002).[1] He further argues that the State cannot retry him on the alternative charge of second degree intentional murder because the guilty finding on the felony murder charge and a special verdict rendered by the jury establish that he was acquitted of that charge.
¶ 2 The State concedes that petitioner's felony murder conviction must be vacated, but it argues that because the jury did not come to a unanimous agreement on the alternative charge of second degree intentional murder, double jeopardy does not bar the State from retrying petitioner on that charge.

*351 BACKGROUND
¶ 3 The State originally charged petitioner with second degree murder, alleging alternative means of intentional murder or felony murder with the predicate offense of second degree assault. Petition Exh. 2. A jury convicted petitioner of intentional murder. On appeal, this court reversed the conviction due to an instructional error and remanded for a new trial. Petition Exh. 5 (State v. Candelario, No. 21435-1-II, 91 Wash.App. 1041, 1998 WL 352528 (unpublished opinion, filed 7/2/1998)).
¶ 4 On remand, the jury found petitioner guilty of second degree murder and returned the following special verdict:
If you found the defendant, VICTOR L. CANDELARIO, guilty of the crime of Second Degree Murder, then you shall answer the following questions:
1. Were you able to unanimously agree beyond a reasonable doubt that:
(a.) The defendant, VICTOR L. CANDELARIO committed intentional Murder of JUANITA MARIE CANDELARIO (Alternative A)?
____ Yes
____ No
 X No Unanimous Agreement
(b.) The defendant, VICTOR L. CANDELARIO, committed Felony Second Degree Murder of JUANITA MARIE CANDELARIO (Alternative B)?
 X Yes
____ No
____ No Unanimous Agreement
¶ 5 Petitioner appealed. In June 2000, this court affirmed the conviction. Candelario, 101 Wash.App. 1002, 2000 WL 713929, No. 24236-2-II (unpublished opinion, filed 6/2/2000).
¶ 6 On October 24, 2002, our Supreme Court held in Andress that second degree assault could not be the predicate felony for a second degree felony murder charge. 147 Wash.2d at 604, 56 P.3d 981. Petitioner then filed this personal restraint petition.

DISCUSSION

I. FELONY MURDER
¶ 7 Petitioner argues, and the State concedes, that his felony murder conviction must be vacated under Andress because it was based on the predicate offense of assault. We agree.

II. CHARGES ON REMAND
¶ 8 Petitioner and the State do not, however, agree on whether the State may pursue a second degree intentional murder charge on remand. The State argues that the special verdict shows that the jury did not acquit petitioner of the intentional murder charge and that it may, therefore, renew this charge on remand unless the evidence presented at trial was insufficient to support that charge. Response at 19-24. Petitioner responds that the felony murder conviction and the special verdict imply that the jury acquitted him on the intentional murder charge and, therefore, double jeopardy precludes the State from renewing the intentional murder charge on remand. Reply at 3-7.

A. Double Jeopardy
¶ 9 The United States Constitution and the Washington State Constitution provide that the State may not put a criminal defendant in jeopardy twice for the same offense. U.S. Const. amend. V; Wash. Const. art. 1, § 9; State v. Corrado, 81 Wash.App. 640, 645, 915 P.2d 1121, (1996), review denied, 138 Wash.2d 1011, 989 P.2d 1138 (1999). "Generally, [double jeopardy] bars trial if three elements are met: (a) jeopardy previously attached, (b) jeopardy previously terminated, and (c) the defendant is again in jeopardy `for the same offense.'" Corrado, 81 Wash.App. at 645, 915 P.2d 1121 (citations omitted). The issue here is whether jeopardy terminated on the second degree intentional murder charge.

1. Implied Acquittal

¶ 10 Once jeopardy attaches, it does not terminate until the defendant is expressly or implicitly acquitted or a conviction becomes unconditionally final. State v. Hescock, 98 Wash.App. 600, 604-05, 989 P.2d *352 1251 (1999) (citing Justices of Boston Mun. Court v. Lydon, 466 U.S. 294, 306-07, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984)); Corrado, 81 Wash.App. at 646-47, 915 P.2d 1121. But double jeopardy does "not bar retrial after a jury is unable to reach a verdict on a charge because there has been no final adjudication on the charge." State v. Ahluwalia, 143 Wash.2d 527, 541, 22 P.3d 1254 (2001); see also State v. Despenza, 38 Wash.App. 645, 654, 689 P.2d 87 (1984) ("A hung jury is not the equivalent of an acquittal for purposes of double jeopardy.") (citing State v. Russell, 101 Wash.2d 349, 351, 678 P.2d 332 (1984)).
¶ 11 Petitioner argues that under State v. Ramos, 124 Wash.App. 334, 101 P.3d 872 (2004); State v. Linton, 122 Wash.App. 73, 93 P.3d 183 (2004), and Hescock, 98 Wash.App. at 611, 989 P.2d 1251, this court must find that he was implicitly acquitted of the intentional murder charge. Reply at 3-5. But these cases are factually distinguishable from petitioner's case. In these cases, one of three things occurred: (1) the finder of fact was silent as to whether it had acquitted the defendant on an alternate charge, (2) the finder of fact expressly found that the State had failed to prove the at least one element of the alternate charge, or (3) an appellate court vacated the defendant's conviction for a lesser included offense. Ramos, 124 Wash.App. at 342-43, 101 P.3d 872 (conviction on lesser included offense and express finding of lack of intent on alternative lesser included offense of second degree intentional murder); Linton, 122 Wash.App. at 80, 93 P.3d 183 (conviction on lesser included offense); Hescock, 98 Wash.App. at 611, 989 P.2d 1251 (silence on the alternative charge); see also State v. Davis, 190 Wash. 164, 166, 67 P.2d 894 (1937) (record silent as to why trial court discharged jury without a verdict on two counts); State v. Daniels, 124 Wash.App. 830, 103 P.3d 249 (2004) (petition for review filed 3/14/2005) (jury silence on alternative charge constituted implied acquittal, rule of lenity requires court to find implied acquittal).
¶ 12 Here, in contrast, the jury did not find petitioner guilty of a lesser included offense,[2] nor did it find that the State failed to prove an element of the alternative intentional murder charge. Additionally, the jury was not silent as to why it failed to convict on the alternative charge; rather, the special verdict clearly stated that the jury could not reach a unanimous agreement.
¶ 13 The jury's inability to come to a unanimous agreement on the intentional murder is tantamount to a hung jury, and, as noted above, "A hung jury is not the equivalent of an acquittal for purposes of double jeopardy." Despenza, 38 Wash.App. at 654, 689 P.2d 87. Accordingly, we cannot infer from the jury's failure to come to a unanimous verdict on the intentional murder charge that it acquitted petitioner on that charge, and double jeopardy does apply on this basis

2. Sufficiency of Evidence on Intentional Murder Charge

¶ 14 Jeopardy also terminates when the State fails to produce evidence sufficient to prove its charge. Corrado, 81 Wash.App. at 647, 915 P.2d 1121. Accordingly, as the State concedes, the State may not charge petitioner with second degree intentional murder on remand if the record demonstrates that there was insufficient evidence of that offense. See Response at 20.
¶ 15 Evidence is sufficient to support a conviction if, when viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find each essential element of the crime beyond a reasonable doubt. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). "A person is guilty of [intentional] murder in the second degree when ... [w]ith intent to cause the death of another person but without premeditation, he or she causes the death of such person or of a third person." RCW 9A.32.050(1)(a) (emphasis added).[3]
*353 ¶ 16 Petitioner argues only that there was insufficient evidence to show he intended to cause the victim's death. He first asserts that his conviction of felony murder rather than intentional murder means that the evidence was insufficient to prove intent. Reply at 6. But the sufficiency standard requires that this court examine the evidence in the light most favorable to the State, and the jury was not required to view the evidence in this manner. Accordingly, the jury's failure to come to a unanimous conclusion on the intentional murder charge is not determinative.
¶ 17 Petitioner also asserts that "there was little evidence of intent." Reply at 6-7. Our review of the record shows otherwise.
¶ 18 In our opinion affirming petitioner's second conviction, we summarized the record of the second trial as follows:
On February 14, 1996, after a quarrel, Candelario moved out of the apartment that he shared with his wife, Marie. They agreed he would return for his belongings on February 16, 1996. Alerted by unopened newspapers laying on the apartment doorstep and unsuccessful attempts to reach her by phone, Marie's friends asked the apartment manager to check on her. On February 21, 1996, the manager found Marie dead in the apartment and contacted the police. The police found Marie, lying across her bed, unclothed from the waist down. She had bruises on her face, throat, and shoulder. At trial, the State established that Marie died of asphyxia due to an external force applied around her neck. Although Marie suffered from epilepsy, the doctor established that it was not the cause of her death.
At trial, Detective Lopez testified about a police interview he conducted with Candelario in New York City on February 24, 1996. Detective Lopez and a second detective traveled there to interview Candelario after establishing that Candelario had pawned his wife's wedding rings in Washington on February 19, 1996, in order to buy a bus ticket to New York. At the interview, Candelario relayed three versions of what happened at the February 16, 1996 meeting with his wife. First, Candelario stated that he had been to their apartment to pick up his belongings, but no argument took place. Second, after Detective Lopez told Candelario that his fingerprints were found on his wife's neck (a ruse), Candelario told the detective that he went to their apartment to discuss reconciliation. While there, she got undressed, had an epileptic seizure, and fell onto to the bed. Candelario stated he then massaged her neck in an effort to unblock her airways. When she turned blue, Candelario became afraid and left. He added that she had given him the wedding rings to pawn for her.
Detective Lopez then pointed out contradictions in Candelario's statements, and Candelario "broke down" and "said he had lied about all types of things." Candelario said he had lied about his wife giving him her wedding rings, and about watching her have a seizure. Then, Candelario relayed a third version of events....
Detective Lopez then relayed Candelario's third scenario. When he had gone to their apartment, Candelario and his wife discussed getting back together. Marie wanted to have sex, began undressing from the waist down, and lay on the bed. When Candelario declined to have sex with her, she began teasing him. He told her to stop, and when she did not, he became angry and began to choke her. She turned blue, and began thrashing about in "death throes." Candelario choked her a little longer; she then stopped moving. Candelario stated he became afraid because he did not want people to think he had killed her intentionally. He removed her wedding rings and left. Detective Lopez added that in relaying the third scenario, Candelario displayed true emotion. Candelario then provided a taped statement, relaying this same third version of the meeting. This audio tape was admitted into evidence and played for the jury.
Candelario, 2000 WL 713929 at *1-2 (footnote omitted).
*354 ¶ 19 "A jury may infer criminal intent from a defendant's conduct where it is plainly indicated as a matter of logical probability." State v. Myers, 133 Wash.2d 26, 38, 941 P.2d 1102 (1997). Here, taken in the light most favorable to the State, the evidence shows that petitioner continued to choke his wife after even after he realized she had turned blue and "began thrashing about in `death throes.'" Candelario, 2000 WL 713929 at *2. A jury could reasonably infer from this evidence that, at this point, petitioner intended to kill his wife. Because there is sufficient evidence to support a charge of second degree intentional murder, double jeopardy does not bar the State from bringing this charge on remand.
¶ 20 Accordingly, it is hereby
¶ 21 ORDERED that this petition is granted, petitioner's felony murder conviction is vacated, and this case is remanded for further proceedings consistent with Andress, 147 Wash.2d at 602, 56 P.3d 981; In re Hinton, 152 Wash.2d 853, 100 P.3d 801 (2004); and this order.
/s/ Armstrong, J.
/s/ Hunt, J.
/s/ Houghton, J.
NOTES
[1] Because petitioner's felony murder conviction makes his judgment and sentence facially invalid, this petition is not subject to the one-year time limit of RCW 10.73.090. See In re Hinton, 152 Wash.2d 853, 857-58, 100 P.3d 801 (2004).
[2] "[S]econd degree intentional murder and second degree felony murder are alternative means of committing the crime of second degree murder." State v. Berlin, 133 Wash.2d 541, 553, 947 P.2d 700 (1997) (citing State v. Russell, 33 Wash.App. 579, 586, 657 P.2d 338 (1983), rev. in part on other grounds by, 101 Wash.2d 349, 678 P.2d 332 (1984)).
[3] The Legislature amended this statute in 2003. Laws of 2003 ch. 3 § 2. The amendment related only to the felony murder provisions, subsection (b) of the statute, and did not change the definition of second degree intentional murder.